OPINION
This matter presents a timely appeal from a jury verdict and judgment rendered upon such verdict by the Mahoning County Common Pleas Court, finding defendant-appellant, David Michael Larew, guilty of aggravated murder in violation of R.C. 2903.01(A) and having a firearm on or about his person or under his control in violation of R.C. 2941.145(A), along with his subsequent sentencing thereon.
On October 23, 1996, William Daniel Morrell visited his sister, Carol Vallas, at 11:20 p.m. to pick up dinner that Ms. Vallas' daughter had prepared for him. (Tr. 153-55). Mr. Morrell had asked his sister to prepare dinner for him because his estranged wife, Alice Larew Morrell, was coming over to his house to discuss moving back in with him. (Tr. 155). Upon preparing to leave his sister's home, Mr. Morrell mentioned that he was experiencing difficulties with the gas gauge in his vehicle. For this reason, Ms. Vallas offered to drive him home or, at least, follow him in case he had any problems. However, Mr. Morrell declined his sister's offer and indicated that he would just call her when he got home. (Tr. 156).
Meanwhile, between approximately 10:30 p.m. and 12:00 a.m., appellant and his co-defendants, Raymond Sphaler and Mark Johnson, arrived at Mr. Morrell's home. Upon arrival at Mr. Morrell's residence, appellant and Johnson, who were armed with shotguns they received from appellant's brother, attempted to enter the trailer where Mr. Morrell lived. (Tr. 290-91, 387-88). After they were unable to gain entrance, appellant and Johnson returned to their vehicle. (Tr. 292, 388). However, as they were about to leave the residence, Mr. Morrell pulled into his driveway and exited his car. (Tr. 293-94). At such time, appellant and Johnson jumped out of their vehicle. (Tr. 294).
The testimony presented at trial revealed that appellant shot Mr. Morrell with a shotgun and then, while Mr. Morrell was on the ground, Johnson shot him again with a shotgun. (Tr. 295-301). Finally, appellant moved closer to Mr. Morrell's fallen body and shot him again. (Tr. 302). Appellant and Johnson immediately returned to their vehicle, where Sphaler had allegedly remained throughout the incident, and left the scene. (Tr. 303, 385, 387, 388).
About five minutes after Mr. Morrell's departure from her house, Ms. Vallas called his home to see if he had made it back safely. Shortly thereafter, Ms. Vallas received a phone call from Alice Larew Morrell inquiring as to the whereabouts of Mr. Morrell. Following a brief discussion with Mrs. Morrell, Ms. Vallas became increasingly concerned about her brother and decided to drive to Mr. Morrell's residence to assure that he had made it home alright. (Tr. 157-58).
When Ms. Vallas arrived at her brother's house she found him laying on the ground between his vehicle and the sidewalk. (Tr. 158). Thinking that Mr. Morrell had suffered a heart attack, Ms. Vallas phoned her daughter and instructed her to call 911. (Tr. 159). However, when she bent down and held her brother's neck, her hand became covered in blood. (Tr. 160). Soon thereafter, William Morrell, Jr. arrived at his father's home, and upon taking hold of his father, determined that he had been shot. (Tr. 164).
On June 6, 1997, a one count indictment was handed down by the Mahoning County Grand Jury charging appellant with aggravated murder, accompanied by a firearm specification. Appellant entered a plea of not guilty at his June 18, 1997 arraignment. Pursuant to said indictment, appellant was arrested and charged with aggravated murder on July 14, 1997.
Appellant thereafter filed a motion to suppress the testimony of his co-defendants, Sphaler and Johnson. A hearing on said motion was conducted by the trial court on August 5, 1998 and appellant's motion was subsequently overruled. With voir dire commencing on August 6, 1998, trial was held from August 10, 1998 through August 14, 1998. On August 14, 1998 the jury of twelve found appellant guilty of aggravated murder and having a firearm on or about his person or under his control.
Appellant's case was called for sentencing on August 18, 1998. Appellant was ordered to serve a term of life imprisonment with parole eligibility after twenty-years on the aggravated murder charge and also ordered to serve three-years actual incarceration for the firearm specification, to be served prior and consecutively to the sentence of imprisonment for the charge of aggravated murder.
Appellant sets forth three assignments of error on appeal.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED THE TESTIMONY OF CO-DEFENDANTS RAYMOND SPHALER AND MARK JOHNSON TO BE ADMITTED INTO EVIDENCE AFTER JOHNSON HAD ADMITTED ON THE STAND THAT HE HAD MADE A DEAL WITH THE PROSECUTION TO PLEAD TO A LESSER CHARGE IN RETURN FOR HIS TESTIMONY AGAINST THE APPELLANT, DAVID MICHAEL LAREW."
Appellant's argument relies upon United States of America v.Singleton, (C.A. 10, 1998), D.C. App. No. 96-10054-05 FGT, unreported, for the proposition that the testimony of a co-defendant which has been induced by a promise of leniency is so wholly unreliable that fundamental notions of justice as expressed in both the state and federal constitutions mandate exclusion of such evidence. In making this argument, appellant cites Section 201(C)(2), Title 18, U.S. Code, the federal illegal gratuity statute, which provides that witnesses shall not be promised anything of value in exchange for their testimony.
Neither the United States Supreme Court nor the Ohio Supreme Court have held that plea-bargaining with a defendant in exchange for the defendant's testimony is unconstitutional. State v. Jackson (1977),50 Ohio St.2d 253, 258. Such accomplice testimony is not automatically precluded, however, it is to be afforded "great caution." Jackson,supra.
R.C. 2923.03(D) states:
 "If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with * * * an offense, the court, when it charges the jury, shall state substantially the following:
"`The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
"`It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.'"
In the case at bar, the trial court instructed the jury pursuant to R.C. 2923.03(D). The court stated:
 "You have heard testimony from Raymond Sphaler and Mark Johnson. Mark Johnson pled guilty to voluntary manslaughter. He was charged as a juvenile involving the same crime Raymond Sphaler is charged with, the same crime as charged in this case. He is awaiting trial.
"An accomplice is one who purposely or knowingly assists or joins another in the commission of a crime. Whether Mark Johnson and Raymond Sphaler were accomplices and the weight to give to their testimony are matters for you to determine.
"Testimony of a person who you find to be an accomplice should be viewed with grave suspicion and weighed with great caution." (Tr. 917-918).
The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on review absent a showing of an abuse of discretion. State v. Manley (1997), Columbiana App. No. 95-CO-53, unreported, citing State v. Hipkins (1982), 69 Ohio St.2d 80. "Further, the court retains discretion to use its own language to communicate the legal principles requested by the proponent of an instruction." Manley, supra, citing State v. Scott (1987),41 Ohio App.3d 313. R.C. 2923.03(D) explicitly requires only that the trial court state it "substantially," and does not require the instruction to be read verbatim. Manley, supra.
While this writer may agree with Singleton, the court is restricted by precedent. In State v. Pethel (1999), Belmont App. No. 97-CR-119, unreported, this court acknowledged that it is not bound by decisions of federal circuit courts. Moreover, we stated that "the federal circuit within which Ohio lies has held that Section 201(C)(2) does not preclude prosecutors from offering leniency in exchange for truthful testimony."Pethel, supra citing United States v. Ware (C.A. 6, 1998), 161 F.3d 414,418.
In United States v. Ware, the Sixth Circuit Federal Court of Appeals held that "[i]t is properly within the prosecutor's prerogatives in connection with plea bargaining to offer promises of leniency in return for a benefit to the government, often in the form of the defendant's cooperation by testifying in the trials of other offenders." Ware,supra, paragraph 5 of the syllabus. Specifically, with regard to the tenth circuit's decision in Singleton, upon which appellant heavily relies, the court stated:
 "A number of district courts have addressed this issue in the wake of Singleton and rejected the rationale of the Singleton decision. United States v. Szur, 1998 WL 661484 (S.D.N.Y. Sept. 24, 1998); United States v. Mejia, 1998 WL 598098 (S.D.N.Y. Sept. 8, 1998); United States v. Barbaro, 1998 WL 556152 (S.D.N.Y. Sept. 1, 1998) (rejecting Singleton's reasoning because of the historical acceptance of leniency conditioned upon testimony agreements); United States v. Juncal, 1998 WL 525800 (S.D.N.Y. August 20, 1998) (relying upon the historical acceptance and the canon requiring that the government be included in the text for the statute to encompass the government); United States v. Gabourel, 9 F. Supp.2d 1246 (D.Col. 1998) (looking not only to the statute but the statutory context); United States v. Guillaume, 13 F. Supp.2d 1331 (S.D.Fla. 1998); United States v. Eisenhardt, 10 F. Supp.2d 521 (D.Md. 1998) (soundly criticizing the reasoning of Singleton, particularly the application of the exclusionary rule); United States v. Reid, 1998 WL 481459 (E.D.Va. July 28, 1998); United States v. Arana, 1998 WL 420673 (E.D.Mich. July 24, 1998)." Ware, supra at 418.
Based upon the foregoing, the testimony of Raymond Sphaler and Mark Johnson was admissible at trial. The Ohio Supreme Court has held that "matters such as the weight of the evidence and witness credibility are primarily to be determined by the trier of fact." State v. Grant (1993),67 Ohio St.3d 465, 477. The function of the reviewing court is to "determine whether the evidence presented, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."State v. Clary (1991), 73 Ohio App.3d 42, 54. "It is the minds of the jurors rather than the reviewing court which must be convinced." Statev. Thomas (1982), 70 Ohio St.2d 79, 80.
Once the trial court properly instructed the jury as to Sphaler and Johnson's testimony, it was within the province of the jury to weigh the evidence and assess witness credibility.
Obscured within appellant's argument under Singleton is the axiom that a conviction based solely on evidence elicited from an accomplice shall not be upheld under the premise of R.C. 2923.03(D).
In State v. Diehl (1980), 64 Ohio St.2d 179, 180, the Ohio Supreme Court recognized that R.C. 2923.03(D) changed the common law in Ohio by establishing that no conviction may be based solely upon the uncorroborated testimony of an accomplice. The Court came to this conclusion by relying on its previous ruling in State v. Pearson (1980),62 Ohio St.2d 291. Citing Pearson, the Ohio Supreme Court reiterated:
 "`In order for the prosecution to satisfy the corroboration requirement of R.C. 2923.03(D), independent evidence must support an accomplice's testimony, and must tend to connect the accused with the alleged crime or must tend to identify the accused as a guilty actor.'" Diehl, supra at 180-81; citing Pearson, supra at paragraph two of the syllabus.
At trial, Officers Sheely and Stenglein of the Mahoning County Sheriff's department testified that they were posted in a driveway across the street from the victim's residence after the investigation was concluded on the night of the crime. (Tr. 462-463). At around three o'clock in the morning, while the officers were completing some reports, they noticed a "red-color" vehicle driving slowly and braking in front of the victim's residence. (Tr. 463, 481). Upon noticing that the car had Pennsylvania license plates, the officers grew suspicious and decided to pull out and follow this vehicle. (Tr. 463). When the officers received information that the vehicle was registered to a David Larew, who was earlier indicated to them as a suspect, they decided to execute a traffic stop. (Tr. 463-464, 481). The occupants of the vehicle were identified as appellant, David Michael Larew, and his brother, also named David Larew. (Tr. 464, 482). The officers were advised to take the pair into custody and deliver them to the Mahoning County Justice Center for questioning. (Tr. 465-66, 484). Appellant, certainly, does not insist that this was purely coincidental.
Appellee also submitted evidence at trial to indicate that the weapons recovered from appellants brother's residence were not only consistent with the evidence discovered and collected at the scene, but were also compatible with the type of weapon which caused the victim's death. In addition, the jury heard the testimony of the attendant in the sporting goods department at Wal-Mart, who recalled that appellant, with whom he was previously familiar, purchased shotgun shells from him around mid-October of 1996. (Tr. 574-575, 578).
The relevant inquiry under Diehl is not whether, in the absence of the accomplice testimony, the evidence must stand alone to sustain a conviction, but merely whether it corroborates the accomplice testimony. In conjunction with the eyewitness testimony offered by Sphaler and Johnson, appellee furnished sufficient independent evidence from which a reasonable jury could conclude that appellant did, beyond a reasonable doubt, commit the offenses for which he was charged.
Accordingly, appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AS THE EVIDENCE AND TESTIMONY PRESENTED AT TRIAL COULD NOT SUPPORT A CONVICTION."
Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v.Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain such a verdict is a question of law. Thompkins, supra. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, supra at 113.
Alternatively, in determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra at 387. "Weight of the evidence concerns `the inclination of the greateramount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Thompkins, supra, at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony." Thompkins, supra at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42. "`The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"Thompkins, supra at 387 citing State v. Martin (1983), 20 Ohio App.3d 172,175.
Appellant's argument under this assignment of error relies solely upon the strength of his first assignment of error wherein he maintained that the testimony presented by Raymond Sphaler and Mark Johnson should have been excluded. Since appellant's first assignment of error was found to be meritless, his argument to the effect that the jury's verdict was against the manifest weight of the evidence based upon the alleged improper inclusion of the testimony offered by Sphaler and Johnson, must also fail.
In light of the fact that testimony in question was properly submitted to the jury and upon a thorough review of the remaining record, appellee met its burden of proving every element of the offense beyond a reasonable doubt. Therefore, the jury did not lose its way in rendering its verdict and such verdict was not against the manifest weight of the evidence.
Appellant's second assignment of error is found to be without merit.
Appellant's third assignment of error alleges:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING THE INTRODUCTION OF IMPROPER `SURPRISE' EXPERT TESTIMONY."
The "surprise" testimony to which appellant refers is that of appellee's expert witness, Ms. Bulger. Appellant avers that Ms. Bulger testified on direct examination to facts that were not disclosed to the defense prior to trial. Specifically, appellant cites the discrepancy between the shotgun gauge shell determination initially revealed in Ms. Bulger's reports and furnished to both parties and the determination divulged by Ms. Bulger on direct examination by appellee. In support of his argument, appellant cites the Ohio Supreme Court's holding in Statev. Wilson (1987), 30 Ohio St.3d 99, for the proposition that failure by the state to comply with the Rules of Criminal Procedure regarding mandatory disclosure of new information amounts to a denial of a defendant's procedural due process rights, thus, a new trial must be awarded.
At trial, counsel for appellant raised the following objection:
 "Your Honor, at this point, the reports that were supplied to me by BCII are absolutely inconsistent with what this witness is now stating. Namely, the report stated that the shot waddings were consistently or probably a .410, depending upon which of the reports you are looking at. This is a total shock. None of this information has been supplied pursuant to Local Rule 9 or 16. There are no discrepancy notices from the BCII laboratory such as we had with the change in the serial number." (Tr. 751).
Counsel for appellee responded by stating:
 "Your Honor, I don't know what happened. I was surprised the first time and then, because I was basing my question on the same reports that I had and I submitted to defense counsel. These two shotgun shell casings were a surprise to me, as they were to you, when she went into her pocket and pulled them out. I have not had an opportunity to discuss anything with her because she came in late, and I just went back there to make sure she was there and she had the material, her reports, and then I came in and sat there until we were ready. What she is testifying to, I was not aware of to supplement discovery or anything. * * *." (Tr. 752).
Upon careful consideration of each parties' position, the trial court decided to allow Ms. Bulger to continue her testimony. However, appellant was provided wide latitude on cross-examination as to the discrepancy between the report provided to appellant and the testimony offered at trial.
Crim.R. 16(D) provides:
 "If, subsequent to compliance with a request or order pursuant to this rule, and prior to or during trial, a party discovers additional matter which would have been subject to discovery or inspection under the original request or order, he shall promptly make such matter available for discovery or inspection, or notify the other party or his attorney or the court of the existence of the additional matter, in order to allow the court to modify its previous order, or to allow the other party to make an appropriate request for additional discovery or inspection."
Appellee complied with Crim.R. 16(D) in the case at bar. As the record indicates, appellee did not have, nor was it aware of, any additional information from Ms. Bulger that should have been provided to appellant prior to or during trial. Additionally, Ms. Bulger was fully available for cross-examination by appellant, who was given wide latitude as to the discrepancy in order to impeach her.
Surprise is best defined in State v. Moore (1991), 74 Ohio App.3d 334,343, wherein the court stated:
 "The existence of surprise is a factual issue left to the trial court's discretion * * * and surprise may be shown if the witness's trial testimony is materially inconsistent with his prior written or oral statement, and counsel lacked reason to believe that the witness would recant when called to testify * * *."
Though the discrepancy between Ms. Bulger's report and her testimony constitutes "surprise" under the aforementioned definition, "[i]n reviewing a trial court's decision to admit or exclude evidence, an appellate court must limit it's review to whether the trial court abused its discretion." State v. Talley (1998) Mahoning App. No. 97 CA 72, unreported, citing State v. Finnerty (1989), 45 Ohio St.3d 104, 107. An abuse of discretion "connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157. Thus, a reviewing court should not substitute its judgment for that of a trial court.
State v. Jenkins (1984), 15 Ohio St.3d 164, 222.
In State v. DeHass (1967), 10 Ohio St.2d 230, the Ohio Supreme Court held that it is the role and obligation of the trier-of-fact to evaluate the credibility of a witness. In a jury trial, it is the jury who must assess witness credibility and determine whose testimony and what evidence warrants belief. State v. McCabe (1999), Belmont App. No. 96 BA 49, unreported, citing Pangle v. Joyce (1996), 76 Ohio St.3d 389, 393. As the trier-of-fact, the jury is entitled to believe or disbelieve the state's witnesses and/or the defense witnesses. McCabe, supra, citingState v. Baker (1993), 92 Ohio App.3d 516, 538, citing State v. Antill
(1964), 176 Ohio St. 61. Therefore, a reviewing court should defer to the findings of the trial court as it is in the best position to observe the demeanor of witnesses to determine credibility. McCabe, supra, citingLesinski v. Henderson (1996), 112 Ohio App.3d 70, 72.
The trial court's decision to allow Ms. Bulger's testimony did not rise to the level of "arbitrary, unconscionable, or unreasonable" so as to warrant reversal for abuse of discretion. Both parties were equally "surprised" by Ms. Bulger's change in opinion. To remedy any resulting prejudice, the trial court granted appellant wide latitude on cross-examination to attack Ms. Bulger's credibility. Regardless, the determination of whether the credibility of Ms. Bulger's testimony was sufficient to sustain a verdict remained with the jury. Consequently, the exercise of discretion by the trial court will not be disturbed by this court on appeal.
Accordingly, appellant's third assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
 _____________________ COX, P.J.
Donofrio, J., concurs, Waite, J., concurs.