The State of Ohio, Appellee, *v.* Jackson, Appellant.

(No. 77-147—Decided June 22, 1977.)

254

Mr. *Simon L. Leis, Jr.*, prosecuting attorney, *Mr. Robert R. Hastings, Jr.*, and *Mr. William P. Whalen, Jr.*, for appellee.

*Mr. Albert J. Mestemaker* and *Mr. Donald G. Montfort*, for appellant.

## I.

*Per Curiam.* Appellant contends that the trial court erred in denying his motion to suppress the statement obtained from him by police on November 19, 1974. The question herein is not whether the interrogating officers properly advised him of his constitutional rights, but whether they ignored those rights after advising appellant of them.

Appellant submits that where a police officer, in an in-custodial setting, tells a homicide suspect that all other possible accomplices already have confessed and implicated the suspect, and plays a recording to prove this, informs the accused that two witnesses can identify him, and shows

the suspect evidence removed from the decedent which identifies the suspect, that in that event the officer has so manipulated the suspect as to overcome him by improper influence and a form of coercion. We disagree.

Appellant relies heavily upon *People* v. *Fioritto* (1968), 68 Cal. 2d 714, 441 P. 2d 625. In that case, the sole issue was the admissibility of the confession of a criminal defendant; central thereto was whether his confession was admissible if elicited after the defendant initially had refused to waive his constitutional rights. The Supreme Court of California determined that, under the facts of that case and pursuant to the explicit directives of *Miranda* v. *Arizona* (1966), 384 U. S. 436, the confession was inadmissible.[1]

Although the Supreme Court of California discerned no alternative to holding the *Fioritto* confession inadmissible, it pointedly continued: "In so holding, we prohibit only continued questioning after an individual has *once* asserted his constitutional rights. We do not, of course, disapprove of the use of statements, whether admissions or confessions, voluntarily initiated by a suspect. Such statements had been repeatedly sanctioned in the decisions of this court * * * and are also expressly authorized in the *Miranda* opinion." *Id.*, at page 719.

The case at bar sharply contrasts with *Fioritto*. Appellant did not initially assert any constitutional right and the record shows that his confession was voluntarily initiated by him.

The instant case is less a parallel to *Fioritto* than to *State* v. *Black* (1976), 48 Ohio St. 2d 262, 358 N. E. 2d 551. In *Black*, a homicide defendant's confession "resulted from

---

[1]"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." *Miranda* v. *Arizona* (1966), 384 U. S. 436, 473-74.

the defendant's independent decision to speak after being confronted at his own request by those of his friends and associates who were aware of his involvement in the crimes and by his father whom he possibly wished to warn of his impending confession and to whom he asserted that the homicide was accidental rather than purposeful. The statements made to him by * * * [an alleged accomplice] that he was going to 'tell the truth' triggered his decision to speak rather than inquisitorial proceedings. The circumstances show no 'over-zealous police' * * * no hostile atmosphere. The statements which resulted merely confirmed persuasive and compelling evidence of guilt." *Black, supra,* at page 266.

As this court held in the fourth paragraph of the syllabus in *Black*:

"Where the warnings mandated by *Miranda* * * * have been given and fully honored, a confession which results from the defendant's independent decision to speak is voluntary although it was made to police officers, while in custody, and in answer to an examination conducted by them.'"[2] This proposition of law is overruled.

## II.

Appellant avers further that it is incumbent upon the state to produce as a witness any law enforcement officer who in any fashion participated in an interrogation resulting in a confession which the state presents as evidence, and that when a confession challenged as involuntary is sought to be used at trial against a criminal defendant, the defendant is entitled to a reliable and clear-cut determination that his confession was voluntarily rendered.

The case relied upon by appellant on this point is *State v. Davis* (1968), 73 Wash. 2d 271, 438 P. 2d 185. Therein,

[2]"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. * * * Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda* v. *Arizona, supra,* at page 478.

the defendant argued that because he denied the state's version of his alleged admissions, and because a witness included on the list of prosecution witnesses was neither called by the prosecution nor his absence explained, the trial court erred in refusing to instruct the jury on the missing witness rule, i. e., that the failure of the state to produce this witness to verify the defendant's waiver of his constitutional rights raised an inference that this prospective witness' testimony would have been unfavorable to the state. *Davis* stated that when the missing witness rule is applicable, the jury should be instructed that it may draw an unfavorable inference against the party failing to call the missing witness, if the jury believes such inference warranted under all the circumstances. *Id.,* at page 281. However, the inference is permissive.

The failure to bring a witness before the court when either party claims that the facts would thereby be elucidated usually gives rise to an inference that the failing party fears to bring the witness forth. This fear suggests that the witness would have exposed facts unfavorable to the failing party.[3] But as this court has held relative to Crim. R. 16(B)(4)[4]: "A party is not required to use every prospective witness it may have. Once the prosecution has established its case, it may rest at the point it chooses." *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 44, 358 N. E. 2d 1051. The missing witness rule applies to inferences, and the weight to be accorded the inference is a matter for the trial court and not a basis for reversal if, as in the instant case,

---

[3] "The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party. * * * [T]he propriety of such an inference in general is not doubted." 2 Wigmore on Evidence (3 Ed.), 162, Section 285 (1940).

[4] Crim. R. 16(B)(4) provides:

"The fact that a witness' name is on a list furnished under subsections (B)(1)(b) and (f), and that such witness is not called shall not be commented upon at the trial."

there is evidence from which that court could find the challenged statement voluntary. This proposition of law is overruled.

### III.

Appellant contends finally that R. C. 2929.02 (providing penalties for murder), R. C. 2929.03 (providing for the imposition of sentence for capital offenses), and R. C. 2929.04 (providing criteria for imposing death or imprisonment for capital offenses), are violative of the Eighth and Fourteenth Amendments to the United States Constitution. Appellant argues that his sentence pursuant thereto was arbitrarily, wantonly, and freakishly imposed, this being inconsistent with the requirements outlined in *Furman* v. *Georgia* (1972), 408 U. S. 238.

In the instant case, none of the mitigating circumstances listed in R. C. 2929.04(B) was established by preponderance of the evidence. However, appellant asserts that since his accomplice, Palmore, enjoyed the dismissal of the specification from his indictment and received the sentence of life imprisonment for murder,[5] appellant's motion to allow him to plead guilty to the murder charge, contingent upon dismissal of the specification and the imposition of a life sentence, should also have been granted. Because appellant's gambit was not accepted, and Palmore's apparently was, appellant proposes that his death sentence was arbitrary.

Neither the United States Supreme Court nor this court has held plea-bargaining with a defendant in exchange for the defendant's testimony unconstitutional. We find no constitutional duty upon the state to accept guilty pleas in exchange for more lenient sentencing, even if an accomplice already has plea-bargained successfully for the lighter sentence. As a practical matter, it is questionable whether the prosecution's plea-bargaining position relative to subsequently-tried accomplices might not be seriously eroded,

---

[5] Palmore entered a guilty plea to the murder count and the trial court found him willing to testify at the behest of the state.

if the state were bound to acquiesce in gentler sentences in exchange for the guilty pleas of all subsequently-tried accomplices, once the first plea-bargain had been reached.

There is no requirement under *Furman* for the state more lightly to punish defendants insisting upon guilty pleas. "*Furman* mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg* v. *Georgia* (1976), 428 U. S. 153, 189. Denial of a plea-bargain to a defendant indicted for a capital offense is not at all arbitrary or capricious; it is consistent with statutes and rules of court directing the prosecution and punishment of criminals.[c]

Our examination of the record in the instant case confirms that the sentencing authority focused on the particular circumstances of this appellant and his crime. This proposition of law is overruled and the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

---

[c]For example, Crim. R. 11(C)(3) provides, in relevant part:

"With respect to aggravated murder committed on and after January 1, 1974, the defendant shall plead separately to the charge and to each specification, if any. A plea of guilty or no contest to the charge waives the defendant's right to a jury trial, and before accepting such plea the court shall so advise the defendant and determine that he understands the consequences of such plea.

"If the indictment contains no specification, and a plea of guilty or no contest to the charge is accepted, the court shall impose the sentence provided by law.

"If the indictment contains one or more specifications, and a plea of guilty or no contest to the charge is accepted, the court may dismiss the specifications and impose sentence accordingly, in the interests of justice."