**The STATE of Ohio, Appellee,**

v.

**SANTINI, Appellant.**

[Cite as *State v. Santini* (2001), 144 Ohio App.3d 396.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95CA130.

Decided June 27, 2001.

*Paul Gains,* Mahoning County Prosecuting Attorney, and *Jan O'Halloran,* Assistant Prosecuting Attorney, for appellee.

*Mark Frost,* for appellant.

VUKOVICH, Presiding Judge.

Defendant-appellant Jayme Lynn Santini was found guilty by a jury of complicity relative to kidnaping, tampering with evidence, and aggravated murder. After being sentenced to three concurrent terms of imprisonment, she asks this court to reverse her convictions upon the grounds that she was denied a speedy trial and that the trial court erroneously failed to suppress her statements made to the police. For the reasons hereinafter set forth, Santini's claimed errors are not meritorious, and the judgment of the trial court is affirmed.

## STATEMENT OF THE FACTS

On October 20, 1994, Santini was arrested. She did not post bond and has remained in custody since that day. The state of Ohio alleged that Santini aided and abetted Thomas Charles Gator in the kidnaping and murder of Michael N. Ellinos. Santini was indicted on one count of complicity to commit kidnapping in violation of R.C. 2923.03(A)(2) and (F) and R.C. 2905.01(A)(3) and (C). She was also indicted on one count of complicity to commit aggravated murder in violation of R.C. 2923.03(A)(2) and (F) and R.C. 2903.01(A) and (C). Finally, Santini was indicted on one count of complicity to commit tampering with evidence in violation of R.C. 2923.03(A)(2) and (F) and R.C. 2921.12(A)(1) and (B). The first two counts contained firearm specifications.

Santini pled not guilty to the charges. The trial was scheduled to commence on January 17, 1995. On December 14, 1994, Santini filed a motion to suppress a statement she made after her arrest without the presence of counsel. On January 17, 1995, the trial was continued, as the court was engaged in another criminal proceeding. On January 18, 1995, the trial was rescheduled to commence on February 15, 1995, and the hearing on Santini's suppression motion was

scheduled for February 9, 1995. On February 9, 1995, the hearing on Santini's suppression motion was continued until February 16, 1995, as her attorney was engaged in a different criminal proceeding. On February 16, 1995, a hearing was held, and the aforementioned motion was overruled. On February 21, 1995, an entry was filed that ordered the trial to commence on March 20, 1995.

On March 14, 1995, Santini filed a motion to dismiss the case against her, claiming that the state had not brought her to trial within the two-hundred-seventy-day time period allotted by R.C. 2945.71. On March 20, 1995, that motion was overruled. The same day, Santini filed a motion to continue the trial and a waiver of her right to a speedy trial.

The trial began on May 3, 1995. The jury found Santini not guilty of the firearm specifications for the first two counts. However, the jury found her guilty of all other charges. The trial court entered a judgment upon the jury's verdict and sentenced Santini accordingly. This appeal followed.

Santini sets forth two assignments of error on appeal. Her first assignment of error alleges:

"The trial court erred in overruling defendant–appellant's motion for discharge due to violation of her speedy trial rights under R.C. § 2945.71."

Santini contends that she must be released from incarceration because the state violated her right to a speedy trial as guaranteed by the Constitutions of the United States and Ohio, and as statutorily set forth in R.C. 2945.71. The state disagrees, arguing that Santini waived her right to a speedy trial. The state additionally maintains that she was brought to trial in a timely manner, as the time period contemplated by R.C. 2945.71 was properly extended by motions filed on behalf of Santini.

## LAW AND ANALYSIS

R.C. 2945.71 provides:

"(C) A person against whom a charge of felony is pending:

"* * *

"(2) Shall be brought to trial within two hundred seventy days after [the person's] arrest.

"* * *

"(E) For the purposes of computing time under Division (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on pending charges shall be counted as three days. * * *"

R.C. 2945.72 states:

"The time which an accused must be brought to trial * * * may be extended only by the following:

"* * *

"(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

"* * *

"(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion. * * * "

Santini was arrested on October 20, 1994. Since she remained incarcerated from that date, she should have been brought to trial no more than ninety days later. She was actually brought to trial one hundred ninety-four days later. Therefore, unless Santini timely waived her right to a speedy trial or the trial date was properly extended pursuant to one of the provisions of R.C. 2945.72, she was denied her right to a speedy trial and must be discharged from her confinement as mandated by R.C. 2945.73.

## EFFECT OF SPEEDY TRIAL WAIVER

On March 20, 1995, Santini executed a waiver of her speedy trial rights. The state maintains that the waiver is effective, even if it was signed after the statutory time within which a trial is to commence. In *State v. Dumas* (1990), 68 Ohio App.3d 174, 176, 587 N.E.2d 932, 933–934, the court held that a waiver of one's right to a speedy trial was effective when made after the time for trial had expired. This court followed that holding in *State v. Smith* (Dec. 30, 1999), Mahoning App. No. 97CA37, unreported, 1999 WL 1279156. Neither of those cases, however, involved a situation where the accused had previously moved for dismissal based on speedy trial grounds. In both instances, the accuseds failed to assert their right to a speedy trial prior to executing their waivers.

An opposite result was reached in *State v. Ellis* (Aug. 11, 2000), Montgomery App. No. 18092, unreported, 2000 WL 1133171. In that case, the time for bringing the defendant to trial expired on March 25, 1999. On August 25, 1999, the defendant's attorney, who replaced prior counsel after his withdrawal, entered an appearance and stated, "defendant * * * does not waive his right to have his case brought to trial within the statutory time limits * * *." However, the next day, the defendant's attorney filed a time waiver. On October 28, 1999, the defendant moved to dismiss for failure to bring him to trial within the statutory time limits. The trial court overruled his motion. The Court of Appeals reversed, holding:

"[T]he time waiver * * * subsequently filed on August 26, 1999, cannot operate retroactively to extend [defendant's] speedy trial date. [Nor] does it operate to waive the statutory right to discharge which accrued to [the defendant] on March 25, 1999 and which [the defendant] was entitled thereafter to invoke in his October 28, 1999 motion to dismiss. The trial court erred when it denied the motion." *Id.*

█ In the case at bar, Santini moved for dismissal, claiming that she was not brought to trial within the statutory time limit. Her motion was subsequently overruled. At that point, Santini executed a waiver of her speedy trial rights and requested a continuance of the trial. Reason and common sense dictate that her waiver did not operate retroactively to negate deficiencies that occurred prior to its being filed. Accordingly, we hold that when the right to a speedy trial has been formally asserted on the record pursuant to a motion to dismiss or a similar motion, a subsequent waiver of speedy trial will have prospective application only. It will not cure any violation of the statutory time frame for trial set forth in R.C. 2945.71 that may have accrued prior to the execution of the waiver. Therefore, in the case *sub judice*, since Santini's motion to dismiss for an alleged violation of Ohio's speedy trial statute preceded her waiver of speedy trial, it is necessary for us to determine whether her motion was meritorious.

## COMPUTATION OF TIME FOR TRIAL

█ In every case in which a purported violation of an accused's right to a speedy trial is at issue, the computation of a try-by date is a condition precedent to its analysis and disposition. This is so because the time frame set out in R.C. 2945.71 is not absolute, as evidenced by the ways a speedy trial date can be extended under R.C. 2945.72. As we noted above, Santini should have been brought to trial within ninety days of her arrest and incarceration, plus any days resulting from an extension pursuant to R.C. 2945.72. All other days are chargeable to the state.

Initially, we note that this court need not consider any continuances *sua sponte* issued by the trial court and whether such continuances complied with the precedent established by *State v. Mincy* (1982), 2 Ohio St.3d 6, 2 OBR 282, 441 N.E.2d 571. The reason for this is that even if we attribute the maximum number of days as being chargeable to the state, we do not find that Santini's statutory right to a speedy trial has been violated.

Under such a worst-case scenario, eighty days are chargeable to the state:

(1) *Fifty–Four days*: From October 21, 1994 (the day after Santini was arrested and incarcerated) to December 13, 1994 (the day before Santini filed her motion to suppress evidence); and

(2) *Twenty–Six days*: From February 16, 1995 (the day Santini's motion to suppress was overruled by the trial court) to March 13, 1995 (the day before Santini filed her motion to dismiss for an alleged violation of her right to a speedy trial).

We further find that Santini's motion to suppress and her motion to dismiss were pending a total of seventy-two days:

(1) *Sixty–Five days*: From December 14, 1994 (the day Santini filed her motion to suppress) to February 16, 1995 (the date the trial court overruled the motion to suppress); and

(2) *Seven days*: From March 14, 1995 (the day Santini filed her motion to dismiss) to March 20, 1995 (the date the trial court overruled her motion to dismiss).

Santini filed a motion for continuance of trial and a waiver of her right to a speedy trial on the same date as the trial court overruled her motion to dismiss (*i.e.*, March 20, 1995). As previously noted, this waiver had a prospective application. Therefore, the resolution of the question as to whether Santini was in fact deprived of her right to a speedy trial depends on whether eleven or more of the aforementioned seventy-two days are chargeable to the state. If so, the total number of days chargeable to the state would exceed ninety. However, for the following reasons, we find that all seventy-two days are chargeable to Santini.

The state contends that since all of the aforementioned seventy-two days are delays resulting from the consideration by the trial court of motions made by or on behalf of the accused, all seventy-two days are automatically chargeable to Santini and operate to extend the time for speedy trial purposes as contemplated by R.C. 2945.72(E). While such a proposition has the advantage of being simple and direct, it has the disadvantage of not being fully accurate.

[3] Looking first to the language of the statute itself, we note that it does not state merely that all motions filed by the accused extend the try-by date for the accused. Rather, R.C. 2945.72(E) states that a motion extends the statutory time for trial "for any period of delay necessitated" by reason of the filing of the motion. Therefore, it is clear to us that the legislature intended that only the motions or proceedings initiated by the accused that cause a delay operate to extend the time for trial. Moreover, we find support for such a conclusion from the drafting committee's comment relative to R.C. 2945.72 wherein the committee noted: "In each of the above cases [*i.e.* 2945.72(A) through (H) ] the applicable time limit is not tolled absolutely, but merely extended by the time necessary in light of the reason for the delay." See *State v. Arrizola* (1992), 79 Ohio App.3d 72, 75, 606 N.E.2d 1020, 1021–1022.

Second, we note the potential absurdity if the position advocated by the state were embraced by this court. Can an innocuous motion such as one to separate witnesses be used to justify a delay in an accused's trial? Can a motion to suppress evidence delay a trial for years? Common sense and a host of courts answer those questions in the negative. In *State v. Martin* (1978), 56 Ohio St.2d 289, 297, 10 O.O.3d 415, 420, 384 N.E.2d 239, 244, the Supreme Court observed:

"We have and will continue to impose upon *both* the prosecution *and* the trial courts the mandatory duty of complying with the provisions of R.C. 2945.71 through 2945.73. * * * A strict adherence to the spirit of the speedy trial statutes requires a trial judge, in the sound exercise of his judicial discretion, to rule on these [defense] motions in as expeditious a manner as possible." (Emphasis *sic.*)

Moreover, if one adheres to the philosophy that a trial court is mandated to decide motions expeditiously and a right to a speedy trial is meaningless if a court can deliberate a defense motion indefinitely, then judicial scrutiny must necessarily embrace a reasonableness standard when called upon to determine whether a defense motion is wholly or partially chargeable to the accused as contemplated by R.C. 2945.72.

Granted, not all courts (including this one) have specifically addressed the issue of reasonableness in rendering decisions. However, the United States Supreme Court has developed a test to determine whether trial delays are reasonable in a constitutional sense. In *Barker v. Wingo* (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117, the court announced a balancing test in which the conduct of both the prosecution and the defendant are weighed by considering the following factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* A review of the relevant facts in most of the cases applying the reasonableness standard indicates that the nature and timing of the defendant's motion must be considered in determining whether a delay in the trial is reasonable. For example, in *State v. Walker* (1974), 42 Ohio App.2d 41, 71 O.O.2d 238, 327 N.E.2d 796, the defendant filed a motion to discharge five days prior to his statutory try-by date and one day prior to his scheduled trial. He then filed a motion to suppress on his try-by date. This court determined that a delay was reasonable. See, also, *State v. Bumbalough* (1992), 81 Ohio App.3d 408, 611 N.E.2d 367 (holding that a one-page motion containing only general accusations and not complying with Crim.R. 47 required a delay for its disposition); ·*University Hts. v. Dachman* (1984), 20 Ohio App.3d 26, 27, 20 OBR 27, 28–29, 484 N.E.2d 199, 200–201 (holding that defendant's jury demand in a minor misdemeanor case extended the time for trial because the demand was improperly made).

 Moreover, we concede that some decisions at first blush appear to stand for the proposition that a motion, if made by the accused, *per se* extends the time for a speedy trial. In *State v. Beam* (1991), 77 Ohio App.3d 200, 207, 601 N.E.2d 547, 552, the appellate court specifically stated: "In this case, appellant filed a motion to suppress thirty-seven days after he was arrested. Unquestionably, under R.C. 2945.72 the motion *automatically* tolled the statutory time for trial." (Emphasis *sic*.) However, having made the statement, the court then addressed the reasonableness of the period of delay. It concluded that a delay of seventy-three days, the time it took the trial court to rule on the motion, "is not an unreasonable time to rule on a motion to suppress." *Id.* at 209, 601 N.E.2d at 553. To reconcile the foregoing statements, we interpret *Beam* to stand for the proposition that a motion to suppress is of such a nature that it almost always will cause a delay in a trial. That delay, however, must be of a reasonable duration to be fully chargeable to the accused.

*Beam* is also helpful to our analysis in that it considered a host of cases relative to how long a court might reasonably consider a motion before it gets into a speedy trial violation. The court noted cases wherein delays of seven months, ninety days, and fifty-eight days were found to be unreasonable, and others wherein delays of thirty-five and seventy-seven days were held by other courts to be reasonable. *Id.* at 208, 601 N.E.2d at 552.

 From the foregoing, we hold that a motion filed by or on behalf of an accused may extend the time period in which an accused has to be brought to trial as contemplated by R.C. 2945.71 and 2945.72 if (1) the motion is of such a ⬦ nature that the court cannot reasonably proceed with trial plans until the motion has been decided,[1] and (2) the period of time the motion is pending is of a reasonable duration.

 In this case, one of the motions made by Santini involved the suppression of statements she made to authorities. Such a motion can only be categorized as being extremely important. Had the statements been suppressed, it is quite possible that a decision would have to be made by the state as to whether it could proceed against the accused as charged. It resulted in a lengthy hearing (two-hundred-forty-one-page transcript) with complex constitutional considerations. Accordingly, we do not find that the sixty-five-day period from its filing to its determination by the trial court was unreasonable. Being a reasonable period of time, the entire sixty-five days operated to extend the time to bring Santini to trial as contemplated by R.C. 2945.72(E).

---

1. See *State v. Stamps* (1998), 127 Ohio App.3d 219, 228, 712 N.E.2d 762, 767, and *State v. Willey* (1981), 5 Ohio App.3d 86, 89, 5 OBR 200, 202–203, 449 N.E.2d 471, 474–475.

■ Similarly, the motion to dismiss and the seven days from its filing to its resolution by the court is also a reasonable and necessary period of delay. Therefore, all seventy-two days that the two aforementioned motions were pending are chargeable to the accused. Accordingly, at the time the trial court overruled Santini's motion to dismiss for an alleged violation of her right to a speedy trial, the state had ten more days in which to bring her to trial. The trial court was correct in overruling the motion, and we find no merit to Santini's first assignment of error.

Santini's second assignment of error alleges:

"The trial court erred to the prejudice of the appellant by overruling her motion to suppress her statement made in violation of her *Miranda* rights, which decision was contrary to the protections of the Fifth and Fourteenth Amendments to the United States Constitution and contrary to case law of the state of Ohio."

## STANDARD OF REVIEW

■■ This court has previously concluded that our standard of review with respect to a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9, 11, citing *Tallmadge v. McCoy* (1994), 96 Ohio App.3d 604, 608, 645 N.E.2d 802, 804–805. Such a standard of review is appropriate because " '[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of the trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, 339, quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831, 833. However, once we have accepted those facts as true, we must independently determine as a matter of law whether the trial court met the applicable legal standard. *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143–1144.

## LAW AND ANALYSIS

After the police apprehended Santini, they advised her of her rights as required by *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and took her into custody. She signed a written form indicating that she was advised of her rights and understood them. The form also stated:

"I understand what my rights are. I am willing to answer questions, and make a statement. I do not want a lawyer, at this time. I understand and know what I am doing. No promises or threats have been made to me, and no pressure of any kind has been used against me. I can read and write English (or understand

English if this statement of rights and waiver were read to me) and make the following statement of my own free will."

She then proceeded to discuss the events surrounding the kidnapping and murder of Michael N. Ellinos.

## VOLUNTARINESS

Santini contends that the trial court improperly admitted her statement into evidence, as it was not made voluntarily. She argues that for the ten days preceding her interrogation, she was high on crack cocaine and did not sleep. She claims that she was questioned for long periods of time and was exhausted when she spoke with police. Initially, she was questioned for forty-five minutes. Within the next several days, she was interrogated for periods of six hours and three and one-half hours.

In determining whether an accused's statement should be suppressed, a trial court must decide whether a voluntary, intelligent, and knowing waiver of the individual's *Miranda* rights occurred prior to making the statement. Whether a statement was made voluntarily and whether an accused voluntarily, knowingly, and intelligently waived her right to counsel and right against self-incrimination are distinct issues. However, both are measured by the "totality of circumstances" standard. *State v. Clark* (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854. See, also, *State v. Eley* (1996), 77 Ohio St.3d 174, 179, 672 N.E.2d 640, 647.

In order for a waiver of rights to be viewed as being intelligently and knowingly made, it must be determined that the waiver was made with full awareness of the nature of the rights being waived and the consequences of the decision to abandon them. *Colorado v. Spring* (1987), 479 U.S. 564, 573, 107 S.Ct. 851, 856–857, 93 L.Ed.2d 954, 965. However, a criminal suspect need not know and understand every possible consequence of a waiver in order for it to be effective. *Id.* at 574, 107 S.Ct. at 857–858, 93 L.Ed.2d at 965–966. So long as the circumstances surrounding the interrogation reveal the requisite level of comprehension on behalf of the accused, the trial court may conclude that *Miranda* rights were properly waived. *Id.*

On numerous occasions the Ohio Supreme Court has had the opportunity to provide guidance on when an accused may be viewed as competent to knowingly and intelligently waive her rights. In *State v. Edwards* (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, overruled on other grounds, *State v. Jackson* (1977), 50 Ohio St.2d 253, 257–258, 4 O.O.3d 429, 432–433, 364 N.E.2d 236, 239–240, it was determined that a defendant with a low I.Q. and a reading capacity at a second-grade level knowingly and intelligently waived his rights after indicating

that he understood the rights read to him by a police officer. It was further found that a defendant's mental retardation and illiteracy did not interfere with the ability to make a knowing and intelligent waiver of rights. *State v. Hill* (1992), 64 Ohio St.3d 313, 595 N.E.2d 884. In *State v. Slagle* (1992), 65 Ohio St.3d 597, 605 N.E.2d 916, the Ohio Supreme Court held that despite the accused's statements that he was under the influence of drugs and alcohol at the time of the waiver, police testimony regarding the accused's coherence could substantiate a conclusion that a knowing and intelligent waiver occurred. Finally, the United States Supreme Court decided in *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473, that despite the fact that the accused suffered from "command hallucinations" that interfered with the ability to make free and rational choices, defendant's waiver could still be viewed as being valid.

██ Despite her claim that she was high on crack cocaine when she was interrogated, Santini testified that she understood the *Miranda* warning, she knew that she had the right to an attorney, and she knew that she had waived her rights. She admitted that she signed the form waiving her rights. She also testified that no threats were made against her. Furthermore, Patrolman Robert Beam, one of the officers who questioned Santini, testified that she was comfortable, coherent, and willing to talk to police. He claimed that she did not appear to be under the influence of drugs. Officer Nicholas Phillips, another officer who questioned Santini, noted that she became tired during their conversation and lay down to rest.

Additionally, Santini insists that police told her that they knew that she murdered Michael N. Ellinos and it was in her best interest to talk. However, Santini signed a form stating:

"I hearby [*sic*] make the following statement voluntarily and of my own free will. I have been advised that I am under no obligation to make any statement and that any statement that I make may be used against me. I have further been advised of my right of counsel and of my right to consult an attorney of my own choosing.

"I have not been promised immunity nor given an inducement to make this statement. Therefore, without promise or hope of reward, without fear or threat of physical harm, I make this statement voluntarily as the truth and I freely volunteer the following statement."

From the foregoing, we have ample testimony to support the conclusion that Santini's statement was voluntary. Moreover, the testimony was, at the very least, credible. Therefore, if we are to find that the trial court should have suppressed Santini's statement, we must look to grounds other than involuntari-

ness. As such, we will now address the second prong of her second assignment of error.

## RIGHT TO COUNSEL

Santini was represented by counsel prior to giving her statement. The day after her arrest, she was in the process of being questioned when her attorney showed up and informed officers that she would not continue with her statement. At that point, the interview ceased. Nonetheless, the questioning resumed several days later. Santini argues that the statement was made in violation of her right to counsel and was therefore inadmissible.

Officer Phillips testified that, after her attorney left, Santini told him that she wanted to complete her statement. He claimed that he advised her that it would be in her best interest to obey her attorney's wishes. He testified that Santini approached him several days later and again expressed her desire to complete her statement. He claimed that he reminded her of her attorney's advice, but she insisted that she wanted to finish her statement. Santini signed a form acknowledging that she was again given her *Miranda* rights and that she understood them. She also signed another waiver of her rights.

Once a request has been made for counsel, all questioning should cease, and law enforcement officers should not seek to reinitiate questioning absent the presence of counsel for the defendant. *Edwards v. Arizona* (1981), 451 U.S. 477, 484, 101 S.Ct. 1880, 1884–1885, 68 L.Ed.2d 378, 385–386. However, under limited exceptions to this general rule, law enforcement officers may nonetheless question an individual after the request for counsel has been made. For instance, if the accused herself initiates further communication, exchanges, or conversation with the police, it is not necessary for counsel to be present during such occurrences. *State v. Raglin* (1998), 83 Ohio St.3d 253, 262, 699 N.E.2d 482, 490–491, citing *Edwards, supra,* at 484–485, 101 S.Ct. at 1884–1885, 68 L.Ed.2d at 385–387. The purpose of these procedures is to ensure that any statement made in a subsequent interrogation is not the result of coercive police pressure. *Minnick v. Mississippi* (1990), 498 U.S. 146, 150, 111 S.Ct. 486, 489, 112 L.Ed.2d 489, 495–496. That is, the courts have indicated a desire to prevent police from badgering a defendant into waiving his or her previously asserted *Miranda* rights. *Id.* The focus is to be on whether law enforcement officials were responsible for initiating the questioning of a defendant once the right to counsel had been exercised. *Id.*

Santini claims that given the totality of the circumstances, her statement was not voluntarily made and should not have been admitted. Her claim, however, is not supported by the record. The trial court denied her request to suppress the

statement. Competent, credible evidence supported the trial court's decision. *Winand, supra.* As such, Santini's second assignment of error is without merit.

For the foregoing reasons, having found each of Santini's assignments of error to be without merit, we affirm the jury's verdict and resultant judgment of the trial court.

*Judgment affirmed.*

GENE DONOFRIO and WAITE, JJ., concur.