OPINION
{¶ 1} Defendant-appellant Antoine Hodge appeals from the denial of his Motion to Suppress. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On December 15, 2003, the Stark County Grand Jury indicted appellant on one count of possession of cocaine in violation of R.C.2925.11(A)(C)(4)(b), a felony of the fourth degree, and one count of possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(a), a minor misdemeanor. At his arraignment on December 19, 2003, appellant entered a plea of not guilty to the charges.
 {¶ 3} On January 23, 2004, appellant filed a Motion to Suppress, seeking to suppress a statement that appellant had made to Sergeant Greg Boudreaux while appellant was incarcerated at the Stark County Jail. The statement was made to Sergeant Boudreaux, an investigator with the Internal Affairs Bureau with the Canton Police Department, in relation to a complaint that appellant had made in writing to internal affairs about his treatment by Officer Mark Diels, the arresting officer. Appellant specifically alleged that his questioning by Sergeant Boudreaux was conducted without notice to, or the presence of, counsel in violation of appellant's constitutional rights to remain silent. The following testimony was adduced at the suppression hearing.
 {¶ 4} At the suppression hearing, Sergeant Boudreaux testified that appellant's mother contacted the Internal Affairs Bureau several times in November or December of 2003 in reference to appellant. Appellant's mother, according to the sergeant, "wanted us to go out and interview him, to talk with him about alleged police misconduct regarding him and his, the times he's been arrested by the police department." Transcript of January 26, 2004, suppression hearing at 8-9. Toward the end of December, appellant's mother delivered a letter from appellant to the Internal Affairs Bureau and a written complaint form. Appellant, in the complaint form, indicated that Officer Diels had planted drugs on him and stopped him unlawfully several times and that the police department had harassed him. Once again, appellant's mother indicated that appellant wished to talk to Sergeant Boudreaux.
 {¶ 5} The sergeant testified that he went out to the Stark County Jail to interview appellant on December 31, 2003, in connection with the complaint and that he taped his conversation with appellant. Sergeant Boudreaux testified that he read appellant his Miranda warnings and that appellant signed a constitutional waiver of his rights. The form signed by appellant stated as follows:
 {¶ 6} "I am a Police Officer. I warn you that anything you say will be used in a Court of Law; That you have an absolute right to remain silent; That you have the right to advice of a lawyer before and the presence of a lawyer here with you during questioning, and That if you cannot afford a lawyer, one will be appointed for you free before any questioning if you desire."
 {¶ 7} The sergeant indicated to the trial court that he did not notify appellant's counsel prior to speaking to appellant at the jail "because these contacts are generally initiated by the suspect, by the person who is in custody or who's making the complaint. Transcript of January 26, 2004, suppression hearing at 16.
 {¶ 8} According to Sergeant Boudreaux, appellant, who was advised that he had a right to have an attorney present, never asked for an attorney. The sergeant, who knew that appellant had court-appointed counsel, further testified that appellant was warned that anything he said may be used against him in a court of law.
 {¶ 9} During his conversation with Sergeant Boudreaux, appellant said that on the night of his arrest by Officer Diels, appellant told Officer Diels that he had drugs in his pocket. Appellant indicated to Sergeant Boudreaux that he had some marijuana and some crack cocaine in his pocket such night, but "continued to maintain that somehow Officer Diels planted drugs on him, ah, despite, he claims that he acknowledged to Officer Diels that he had drugs on him." Transcript of January 26, 2004, suppression hearing at 21.
 {¶ 10} At the conclusion of the suppression hearing, the trial court denied the motion to suppress stating, in relevant part, as follows:
 {¶ 11} "Having said that, ah, this is a situation where a defendant was in custody at the Stark County Jail as a result of criminal charges against that defendant.
 {¶ 12} "The defendant and the defendant's mother, ah, obviously had issues with regard to Officer Diels and filed complaints and made themselves known that they were upset with Officer Diels to the Canton Police Department.
 {¶ 13} The complaint finds its way in the internal affairs division. They now are in a position where they have a complaint against an officer, ah, lodged by a, ah, defendant.
 {¶ 14} "There is nothing that I am aware of that says they have to, under the law, wait until the case is over.
 {¶ 15} "I'm saying it's good policy. . . .
 {¶ 16} "They did go out to interview. Good judgment, good policy to this Court would be that they would notify defense counsel. Whether — I don't believe they are required to under the law, because the request was initiated by the defendant, ah, and the defendant's mother.
 {¶ 17} "There is no question that when you have a complaint about misconduct against an officer, ah, and that officer has been involved in the case, ah, they are necessarily interrelated.
 {¶ 18} "And not withstanding the transcript and the questioning by defense counsel, ah, the officer, himself, has testified that the rights that he read to the defendant, ah, that he made it clear to the defendant that if he made statements that were of an incriminating nature, they can or would be used against him in trial. . . ." Transcript of January 26, 2004, suppression hearing at 39-41. The trial court further noted that appellant had waived his constitutional rights.
 {¶ 19} The matter then proceeded to a bench trial before the court. At trial, Officer Mark Diels of the Canton Police Department testified that he was on duty on the evening of November 1, 2003, in a marked cruiser when he responded to a call at approximately 2:30 a.m. about a fight inside JJ's Bar. When he drove up to the bar with his partner, Officer Diels saw appellant walk out of the bar and walk over to a black Ford Ranger truck. Officer Diels and his partner then went inside the bar and spoke to the owner, who told them that he had been hit over the head with a chair and with a beer bottle. Officer Diels then left the bar and observed appellant walking back towards the truck again. The officer then went over to see what appellant was doing since he was concerned that appellant might have placed a weapon in the truck and patted appellant down for safety reasons. As he was patting appellant down, the bar owner came out and struck appellant in his face yelling "that's the son of the bitch that hit me in the head with the chair." Transcript at 63.
 {¶ 20} Officer Diels then placed appellant under arrest for assault and handcuffed him. During a search of appellant's person, Officer Diels found clear plastic baggies containing suspected marijuana and suspected crack cocaine in appellant's pant pocket. Appellant, according to the officer, "[s]tated that it wasn't his, I planted it on him at the time . . ." Transcript at 66.
 {¶ 21} Sergeant Boudreaux, the next witness to testify, testified that when he spoke to appellant in jail about appellant's complaint about Officer Diels, appellant told him that he had a small amount of marijuana and about five to ten pieces of crack cocaine in his pocket on the night of his arrest. The following is an excerpt from Sergeant Boudreaux's trial testimony:
 {¶ 22} "I asked him [appellant] what had happened. He indicated to me that he told Officer Diels that he had drugs in his pocket.
 {¶ 23} "Ah, I asked him how, what kind of drugs, what did he have in his pocket. He told me that he had a small amount of marijuana and, ah, about five to ten pieces of crack cocaine. I don't remember specifically the number he may have said.
 {¶ 24} "Ah, I asked ah, Mr. Hodge how Officer Diels planted drugs on him. He wouldn't get specific on that, but — other than he maintained that drugs were planted on him.
 {¶ 25} "I had told Mr. Hodge that the crime lab, ah, indicated that Officer Diels had turned in a small amount of marijuana, as well as, I believe it may have been five or six pieces of crack cocaine. Again, I'm not sure at this time how much was turned in.
 {¶ 26} "And I asked him, well — and I believe it was a discrepancy of maybe three or four pieces. And I asked him, well, did Officer Diels plant three or four pieces on you, and he would not get specific on how much drugs were planted on him.
 {¶ 27} "Ah, and, and basically I confronted him with what I felt was an inconsistency in his statement, in that it was my belief that, that he was, he was wrong, that he was incorrect that Officer Diels had planted drugs on him. Transcript at 78-79.
 {¶ 28} Jay Spencer of the Canton-Stark County Crime Lab testified at trial that testing performed on the eight pieces plus some fragments of a hard white substance found inside one of the baggies confirmed that the baggie contained 1.86 grams of crack cocaine. Testing on the substance in the other baggie confirmed that the baggie contained 1.60 grams of marijuana.
 {¶ 29} After the State rested, appellant testified in his own defense. Appellant admitted telling Officer Diels that he had some "weed" in his pocket. Transcript at 95. According to appellant, Officer Diels "initially stated I didn't have no weed, I had some dope." Transcript at 95. Appellant testified that he told the officer that the "dope" was not his and that he said "Hey, ya'll. Diels' trying to plant some dope on me. Transcript at 96. The following testimony was adduced when appellant was asked about Sergeant Boudreaux's trial testimony:
 {¶ 30} "Q. Okay. You heard Sergeant Boudreaux testify that you told him, when you spoke with him at the Stark County Jail on December 31 of 2003, that you told Officer Boudreaux that — on November 1 you had told Officer Diels that you had marijuana and crack cocaine on you?
 {¶ 31} "A. No, I never said I had crack cocaine on me.
 {¶ 32} "Q. Okay. So, if the transcript and the tape indicates that you told officer — or Sergeant Boudreaux that, that would be incorrect?
 {¶ 33} "A. I told Officer Boudreaux at the time of the investigation — he asked me, Well, did you have any, anything else beside marijuana. I said, Yes. He said, What; I said, Some crack.
 {¶ 34} "So he asked me, About what did you have. Um, say about five pieces, had about five stones.
 {¶ 35} "So he asked me, Well, on that, what the lab says is 1.87 grams. And from my — doing what I was doing, being an ex-drug dealer, I stated, That's almost 10 to 12 stones lab testing wise.
 {¶ 36} "I said, For 5 stones —
 {¶ 37} "The only equivalent to 1.8, even 8 stones don't equivalent to 1.8. That's almost like 10 stones, . . . Every piece supposed to be like .2 grams, 4 equivalent to 5, 5 grams is 1. From five grams to ten is two grams, could be anywhere from. To two grams. That's ten stones." Transcript at 98-99. According to appellant, five stones of crack cocaine would be less than one gram.
 {¶ 38} At the conclusion of the trial, the trial court found appellant guilty of both charges. As memorialized in a Judgment Entry filed on January 30, 2004, appellant was sentenced to seventeen months in prison.
 {¶ 39} Appellant now raises the following assignment of error on appeal:
 {¶ 40} "The trial court erred in denying appellant's motion to suppress."
 I {¶ 41} Appellant, in his sole assignment of error, argues that the trial court erred in denying his Motion to Suppress. Appellant specifically contends that his statement to Sergeant Boudreaux should have been suppressed since it was given without appellant's attorney present and since appellant was never advised that any statements that he made to Sergeant Boudreaux could be used in appellant's pending criminal case. We disagree.
 {¶ 42} There are three methods of challenging on appeal a trial courts ruling on a motion to suppress. First, an appellant may challenge the trial courts findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning
(1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141, State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172. State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908,Guysinger, supra.
 {¶ 43} Appellant contends that his statement to Sergeant Boudreaux should have been suppressed since the Sergeant did not inform appellant's counsel of the interview at the jail prior to conducting the same. It is constitutionally fundamental that criminal defendants have a right to an attorney, and the right to have an attorney present during questioning. Once a defendant requests counsel, all questioning must cease, and law enforcement officers should not seek to reinitiate questioning absent the presence of counsel for the defendant. Edwards v. Arizona (1981),451 U.S. 477, 481, 101 S.Ct. 1880. However, there is a limited exception to this general rule. State v. Santini, 144 Ohio App.3d 396,2001-Ohio-3313, 760 N.E.2d 442. If the accused initiates further communication, exchanges, or conversations with the police, it is not necessary for counsel to be present during such occurrences. State v.Raglin (1998), 83 Ohio St.3d 253, 262, 699 N.E.2d 482, citing Edwards,
supra at 484-485. "Accordingly, when questioning occurs between law enforcement officials and a defendant after the defendant has exercised his or her right to counsel, the relevant inquiry is whether law enforcement officials were responsible for initiating the questioning or whether the defendant was responsible." See State v. Calwise, Mahoning App. No. 00 CA 77, 2003-Ohio-3463, at paragraph 12, citing Santini,
supra. As noted by the court in Calwise, "there is no requirement that once an accused initiates a conversation between himself and the police, the police must call the accused's attorney."[1] A defendant may initiate such a conversation through the agency of a non-attorney third party. See State v. VanHook (1988), 39 Ohio St.3d 256, 530 N.E.2d 883.
 {¶ 44} In the case sub judice, Sergeant Boudreaux's conversation with appellant was initiated by appellant, through his mother, at appellant's request. Testimony was adduced at the suppression hearing that appellant's mother contacted Sergeant Boudreaux at the Internal Affairs Bureau and wanted him to go out and interview appellant at the jail in regard to alleged police misconduct relating to appellant's arrest. Towards the end of December of 2003, appellant's mother delivered a letter from appellant and a written complaint form that was filled out by appellant. Once again, appellant's mother indicated that appellant wished to speak with Sergeant Boudreaux at the jail. Based on the foregoing, we concur with the trial court that the contact was initiated by appellant and his mother and that there was no requirement that appellant's counsel be notified.[2] Moreover, Sergeant Boudreaux gave appellant hisMiranda warnings prior to speaking with him. Appellant, although advised that he had a right to have an attorney present, never requested one.
 {¶ 45} Furthermore, contrary to appellant's argument, Sergeant Boudreaux did advise appellant that any statements could be used against him. The form signed by appellant advised appellant that anything he said "will be used in a Court of Law . . ."
 {¶ 46} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 47} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J., Gwin, P.J. and Boggins, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County of Common Pleas is affirmed. Costs assessed to appellant.
[1] In Calwise, the defendant had initiated a conversation with a Detective four months after legal counsel had been appointed for him and told the Detective that he did not want his attorneys present during the conversation.
[2] See State v. VanHook (1988), 39 Ohio St.3d 256, 530 N.E.2d 883, in which the court held that the appellant himself had reinitiated his own interrogation through a non-attorney third party, his mother. InVanHook, the appellant's mother had told a detective that the appellant wanted to talk to him.