OPINION
{¶ 1} Rhonda A. Scharf appeals from the judgment of the Lake County Court of Common Pleas, which denied, in part, her motion to suppress, and from the judgment of the Lake County Court of Common Pleas convicting her of one count of driving under the influence of alcohol,[1] a fourth degree felony, and one count of driving with a concentration of seventeen-hundredths of one per cent or more by weight of alcohol in her blood,[2]
a fourth degree felony. We affirm.
 {¶ 2} The evidence established that at 12:25 p.m., May 22, 2002, a motorist told Officer Phillip Bowser of the Wickliffe Police Department that a car had apparently struck a retaining wall in the driveway of 2511 Rockefeller Road. Officer Bowser investigated and saw a car with its left front against the retaining wall. Scharf was in the driver's seat of the car, the car was running and in neutral. Scharf's head was back and her eyes were closed. It appeared to Officer Bowser that Scharf was sleeping or unconscious.
 {¶ 3} The driver's side window was at least partially down so Officer Bowser called to Scharf and shook her. This roused Scharf. Officer Bowser asked Scharf if she was O.K. Scharf mumbled something about being a diabetic. Officer Bowser smelled the odor of an alcoholic beverage coming from Scharf, who again passed out and became unresponsive. Officer Bowser called for a rescue squad, which came and transported Scharf to Richmond Heights Hospital.
 {¶ 4} Nurse Herp, who treated Scharf, described her condition as "obtundent" and unresponsive to pain stimuli. Herp testified "obtundent" means the patient does not have control of her muscle movement and is not able to maintain her airway. A obtundent patient must be closely monitored, as she may need to be intubated.
 {¶ 5} Scharf's blood was drawn when she arrived at the hospital. Upon Officer Bowser's request, a second blood draw was performed; however, this draw occurred two hours and fifteen minutes after Bowser's initial contact with Scharf. Scharf was unconscious at the time of the second blood draw. In fact, she never gained complete consciousness during the time she was being treated in the emergency room. Officer Bowser signed the consent form for the second blood draw and Nurse Herp noted on the form that Scharf was "unable to sign."
 {¶ 6} Scharf's version of the events (which was rejected by the trial court at the suppression hearing) differed significantly. She claimed she left work at approximately 9:00 a.m., because she was ill. She testified she went home and tried to rest but was congested and people kept coming to her house to dump trash in the ravine behind her house, and that her telephone kept ringing.
 {¶ 7} Scharf testified that at approximately 10:15 a.m., she drank a bottle of NyQuil so she could sleep. She was again unable to rest so she drank a second bottle of NyQuil at about 11:00 a.m. Scharf also testified she was a recovering alcoholic and her ingestion of NyQuil triggered her to drink almost an entire bottle of Listerine.
 {¶ 8} After drinking the Listerine, Scharf felt groggy and tried to lie down, but a truck was coming down her driveway to dump trash so she went outside to stop the driver. While outside, she decided just to sleep in her car so she could stop people from dumping trash in the ravine.
 {¶ 9} Scharf testified she was awakened by Officer Bowser who asked if she was O.K. Scharf assured him she was fine. Officer Bowser asked if she knew where she was and she responded she was in her car in her driveway. According to Scharf, Officer Bowser repeatedly asked her if she was O.K. and she repeatedly told him she was fine and that he did not need to be there. Scharf also testified she told Officer Bowser to leave. Scharf testified her car was not running and the ignition key was in her lap.
 {¶ 10} Scharf testified she remembered hearing what was being said but that she was groggy and did not talk. She testified the events of the day were "crystal clear."
 {¶ 11} The state and Scharf stipulated that the results of the second blood draw showed a blood alcohol level of .33g/ml; that the results of the first blood draw, after conversion from mg/dl to g/ml, showed a blood alcohol level of .344 g/ml. The parties also stipulated the second blood draw was conducted two hours and fifteen minutes after Officer Bowser first contacted Scharf and that if this blood draw had occurred within the two-hour period the result would have been in excess of the legal limit.
 {¶ 12} Scharf was subsequently indicted on one count of driving under the influence of alcohol,[3] a fourth degree felony, and one count of driving with a concentration of seventeen-hundredths of one per cent or more by weight of alcohol in her blood,[4] a fourth degree felony. Scharf waived her right to be present at her arraignment and the trial court entered a plea of not guilty on her behalf.
 {¶ 13} Scharf filed a motion to dismiss or in the alternative suppress. In her motion she contended Officer Bowser unconstitutionally entered and remained on her property; that she never waived her physician-patient privilege under R.C. 2317.02; that she was not unconscious at the time of the second blood draw and therefore, Officer Bowser could not sign her consent; that R.C. 2317.02(B)(1)(c) was unconstitutional; that R.C. 4511.191(A) and (B) were unconstitutional; and that the state failed to comply with O.A.C. 3701-53-01 et seq.
 {¶ 14} Following a hearing, the trial court found the state failed to draw Scharf's blood (the second blood draw) within the two-hour time limit established by O.A.C. 3701-53-05, and thus, the state could not use this evidence to prosecute Scharf under former R.C. 4511.19(A)(5). The trial court found such evidence could be used to prosecute Scharf for violating R.C.4511.19(A)(1). The trial court denied Scharf's motion as to all other issues.
 {¶ 15} The matter proceeded to a jury trial where Scharf was found guilty on both counts. The trial court sentenced Scharf to 120 days in jail and two years of community control sanctions. Scharf filed a timely appeal raising four assignments of error:
 {¶ 16} "[1.] The trial court erred in denying [appellant's] [sic] motion to suppress, both at the motion hearing and prior to trial, in that the officer entered on private property without a warrant based on a hearsay tip and refused to leave the property when requested by the defendant-appellant Rhonda A. Scharf.
 {¶ 17} "[2.] The trial court erred in overruling defendant-appellant Rhonda A. Scharf's motion to suppress the results of the blood alcohol test when the test was administered by EMS officials in the course of treatment at a time when the appellant was not under arrest and when said test was not given at the direction of a law enforcement officer; and when appellant was conscious and able to refuse the test.
 {¶ 18} "[3.] The trial court erred in failing to suppress the results of a blood alcohol test when such test was taken for treatment purposes and when appellant had a reasonable expectation of privacy in these medical records; and where appellant's privacy interests outweigh the state's right to know or have access to that information, particularly where the state did not have probable cause to arrest this appellant.
 {¶ 19} "[4.] The trial court's definition of conduct constituting `operation' was overly broad."
 {¶ 20} Scharf's first three assignments of error challenge the trial court's ruling on her motion to suppress. When considering an appeal of a ruling on a motion to suppress we review the trial court's findings of fact only for clear error and give due weight to inferences the trial judge drew from the facts. We must accept the trial court's factual determinations when they are supported by competent and credible evidence. We determine only whether the findings of fact were against the manifest weight of the evidence.[5] We review the trial court's application of law to those facts de novo and independently determine whether the facts meet the appropriate legal standard.[6]
 {¶ 21} In the instant case, we accept the trial court's factual determinations as they are supported by competent, credible evidence.
 {¶ 22} Scharf first argues Officer Bowser entered and/or remained on her property in violation of the Fourth Amendment. We disagree,
 {¶ 23} "Exigent circumstances" is a well-established exception to the Fourth Amendment's warrant requirement.[7]
"`The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'"[8]
 {¶ 24} In the instant case, Officer Bowser was advised a car had apparently hit a retaining wall. Upon investigating the report, he discovered Scharf unconscious in her car; the car was running. Officer Bowser testified Scharf told him she was diabetic. While Scharf testified she told Officer Bowser to leave, the trial court properly disregarded Scharf's testimony. Thus, exigent circumstances justified Officer Bowser's warrantless entry of Scharf's property.
 {¶ 25} Scharf's first assignment of error is without merit.
 {¶ 26} In her second and third assignments of error, Scharf challenges the trial court's denial of her motion to suppress the results of the blood tests.
 {¶ 27} Scharf first argues the trial court should have suppressed the results of the second blood draw for all purposes because R.C. 4511.191 was not applicable. We agree but ultimately conclude the error was harmless.
 {¶ 28} Former R.C. 4511.191 provided in relevant part:
 {¶ 29} "(A) Any person who operates a vehicle upon a highway or any public or private property used by the public for vehicular travel or parking within this state shall be deemed to have given consent to a chemical test or tests of the person's blood, breath, or urine for the purpose of determining the alcohol, drug, or alcohol and drug content of the person's blood, breath, or urine if arrested for operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or for operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine. The chemical test or tests shall be administered at the request of a police officer having reasonable grounds to believe the person to have been operating a vehicle upon a highway or any public or private property used by the public for vehicular travel or parking in this state while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or with a prohibited concentration of alcohol in the blood, breath, or urine. The law enforcement agency by which the officer is employed shall designate which of the tests shall be administered.
 {¶ 30} "(B) Any person who is dead or unconscious, or who is otherwise in a condition rendering the person incapable of refusal, shall be deemed not to have withdrawn consent as provided by division (A) of this section and the test or tests may be administered, subject to sections 313.12 to 313.16 of the Revised Code."
 {¶ 31} Former R.C. 4511.191 applied more narrowly than did former R.C. 4511.19(A). The latter provided, "No person shall operate any vehicle, streetcar, or trackless trolley within thisstate, if any of the following apply: * * *." (Emphasis added.) Thus, it governed the operation of vehicles anywhere within the state. Former R.C. 4511.191 applied only to vehicles operated "upon a highway or any public or private property used by thepublic for vehicular travel or parking within this state * * *." (Emphasis added.)
 {¶ 32} In the instant case, Officer Bowser discovered Scharf unconscious in her private driveway. The state failed to present any evidence to establish Scharf had operated her car "upon a highway or any public or private property used by the public for vehicular travel or parking," while under the influence or with a prohibited blood alcohol content. Therefore, the trial court should have suppressed the results of the second blood draw for all purposes.
 {¶ 33} Scharf also argues the trial court erred in failing to suppress the results of the first blood draw. We disagree.
 {¶ 34} R.C. 2317.02(B)(1)(c) abrogates the physician-patient privilege:
 {¶ 35} "In any criminal action concerning any test or the results of any test that determines the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the patient's blood, breath, urine, or other bodily substance at any time relevant to the criminal offense in question."
 {¶ 36} R.C. 2317.02(B)(2)(a) provides:
 {¶ 37} "If any law enforcement officer submits a written statement to a health care provider that states that an official criminal investigation has begun regarding a specified person or that a criminal action or proceeding has been commenced against a specified person, that requests the provider to supply to the officer copies of any records the provider possesses that pertain to any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, breath, or urine at any time relevant to the criminal offense in question, and that conforms to section2317.022 of the Revised Code, the provider, except to the extent specifically prohibited by any law of this state or of the United States, shall supply to the officer a copy of any of the requested records the provider possesses. * * *."
 {¶ 38} In the instant case, there is no record of Officer Bowser requesting a copy of the records related to the first blood draw. However, the record does contain a subpoena issued by the prosecuting attorney requesting the results of the blood test.
 {¶ 39} In Ohio, medical records are protected by statute.[9] The privilege does not apply to tests results performed to determine the presence or concentration of alcohol in the patient's blood.[10] In other words, the physician-patient privilege is waived with respect to "any blood alcohol, test [that] is relevant to a criminal offense."[11] "This waiver is not predicted upon the strict compliance by law enforcement officials and health care providers with the procedural regulations of R.C. 2317.02(B)(2)(a)."[12]
 {¶ 40} The statute permits a law enforcement officer to request the records at issue. A prosecuting attorney is a law enforcement officer.[13] While the subpoena did not strictly comply with the requirements of R.C. 2317.02(B)(2)(a), it was not required to do so.[14] The statute abrogates the physician-patient privilege and is designed to protect health care providers who release information to law enforcement officers; it is not designed to provide procedural safeguards to criminal defendants.[15] Thus, the trial court did not err in refusing to suppress the results of the first blood draw.
 {¶ 41} While the trial court erred in failing to suppress the results of the second blood draw for all purposes, the results of the first blood draw were sufficient to convict Scharf on both counts. Therefore, any error was harmless.
 {¶ 42} Scharf's second and third assignments of error are without merit.
 {¶ 43} In her final assignment of error, Scharf challenges the trial court's definition of "operation" as given in the jury instructions. We have reviewed the trial court's instruction regarding the definition of "operation." The instruction defines this term as the Ohio Supreme Court did in State v.Gill.[16] Therefore, the trial court did not err in its instruction.[17]
 {¶ 44} Scharf also takes issue with the trial court's repetition of the definition of "operation"; however, she fails to present any argument as to how she was prejudiced by this repetition, nor can we discern any prejudice. The trial court simply repeated the definition so that it was clear to the jury.
 {¶ 45} Scharf's final assignment of error is without merit.
 {¶ 46} For the foregoing reasons, Scharf's assignments of error are without merit and the judgment of the Lake County Court of Common Pleas is affirmed.
Ford, P.J., Grendell, J., concur.
[1] Former R.C. 4511.19(A)(1).
[2] Former R.C. 4511.19(A)(5).
[3] Former R.C. 4511.19(A)(1).
[4] Former R.C. 4511.19(A)(5).
[5] State v. Bokesch, 11th Dist. No. 2001-P-0026, 2002-Ohio-2118, ¶ 12-13.
[6] Id.
[7] State v. Applegate (1994), 68 Ohio St.3d 348, 349.
[8] Id. quoting Mincey v. Arizona (1978), 437 U.S. 385,392-393, in turn quoting Wayne v. United States (C.A.D.C. 1963), 318 F.2d 205, 212.
[9] State v. Tomkalski, 11th Dist. No. 2003-L-097,2004-Ohio-5624, ¶ 27.
[10] Id. citing R.C. 2317.02(B)(1).
[11] Cleveland v. Rollins, 8th Dist. No. 79614, 2002-Ohio-1087, 2002 Ohio App. LEXIS 1105, 7.
[12] Id.
[13] R.C. 2901.01(A)(11)(h). See, also, Rollins, supra.
[14] Rollins, supra at 7.
[15] Id. at 5, quoting State v. Webb (1994),70 Ohio St.3d 325, 334-335 ("However, error involving a privilege is not a constitutional violation. In the first place, the privilege is not a requirement of due process. Privileges do not make trial more fair; they neither facilitate the fact-finding process nor safeguard its integrity.")
[16] (1994), 70 Ohio St.3d 150.
[17] State v. Carr (Dec. 10, 1999), 11th Dist. No. 98-L-131, 1999 Ohio App. LEXIS 5933, 10-13.