JOURNAL ENTRY and OPINION
{¶ 1} Appellant Gerald Knox appeals the trial court's denial of his motion to suppress. On appeal he assigns the following error for our review:
"I. The court erred when it denied the defendant's motion tosuppress."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On March 26, 2004, the Cuyahoga County Grand Jury indicted Knox for possession of drugs, drug trafficking, and possession of criminal tools. At his arraignment, Knox pled not guilty to the indictment and subsequently filed a motion to suppress. On August 30, 2004, the trial court held the suppression hearing.
 SUPPRESSION HEARING {¶ 4} At the hearing, Officer Joshua Varga of the Cleveland Clinic Police Department testified that on January 21, 2004, he responded to a call from the Intercontinental Hotel, which is owned and operated by the Cleveland Clinic Foundation. Officer Varga stated the call was in response to a claim that a visitor on the eighth floor of the hotel smelled smoke.
 {¶ 5} When Officer Varga arrived at the hotel, he met Officer Potchatek, the head of security, who explained that his initial investigation revealed the smell of marijuana smoke. In an attempt to locate the source of the smoke, Officers Varga and Potchatek started on the second floor of the hotel and began working their way up. When they exited the elevator on the fourth floor, the officers smelled what they believed to be a strong odor of marijuana. The officers followed the odor, which eventually led them to Room 420.
 {¶ 6} Officer Varga knocked on the door and a black male, who was later identified as Gerald Knox, answered the door with the safety chain still attached. After identifying themselves as Cleveland Clinic police officers, they asked Knox to step into the hallway. When Knox opened the door to step into the hallway, the odor of the marijuana increased dramatically. Officer Varga described the odor as burnt or burning marijuana.
 {¶ 7} Officer Varga testified as follows regarding the exchange in the hallway outside Knox's hotel room:
"Q. So, what happened after he stepped out?
 A. When he stepped out, he — he spoke with us. And when we — when Iadvised him that we were getting a smell of smoke, and he told me I willput it out. I will put it out. And I am like, okay, put it out. Then Iresponded — I asked him if I were able to gain entry, if we can do asecurity check of the room, because we were getting reports of a smell ofsmoke, and he complied. He gave us consent to enter the room.
 Q. Do you remember what he said, at that point?
 A. Yes. He told us that him and his were — just got done having sex, ormaking love, and he wanted to tell her to get dressed first.
 Q. Okay. Now, did he tell you you had to wait outside until hedid that?
 A. No, he did not.
 Q. What, specifically, did he say?
 A. He just said to us, yeah, we could come in, but he wanted to tellhis girl to get dressed.
 Q. So then what happened?
 A. When he opened the door —
 Q. Excuse me. Let me back up. Did you discuss anything else interms of who was in the room?
 A. I asked if anybody else was in the room with him, at that time. Andhe said, no, just him and his girl were in the room, no one else."[1]
 {¶ 8} Officer Varga stated that they immediately followed Knox into the suite, and upon entering, noticed a black male sitting at the kitchen table, and another seated on the living room couch. Knox proceeded to the bedroom and Officer Varga followed him, while Officer Potchatek watched the two males in the outer rooms.
 {¶ 9} When Officer Varga entered the bedroom, he found another male laying on the bed with a fully clothed female next to him. Officer Varga then noticed a large clear plastic bag containing suspected marijuana on the bed. Additionally, Officer Varga noticed another large plastic bag, containing suspected marijuana, sticking out from underneath the bed.
 {¶ 10} Finally, Officer Varga stated they arrested Knox and the other individuals in the suite, and subsequently turned the matter over to the Cleveland Police Department.
 {¶ 11} Knox testified on his own behalf. According to Knox, he was staying at the Intercontinental Hotel for the fourth time that week, when he heard a knock on the door to his hotel suite. He looked through the peephole and saw that it was Cleveland Clinic police officers. Consequently, he stepped into the hallway, closed the door behind him, and proceeded to talk with the officers.
 {¶ 12} Once in the hallway, Knox described the sequence of events as follows:
"Q. Tell us what happened.
 A. I stepped outside, and I seen two officers. It was — one of theofficers was that guy right there, and the other officer, he's not here.And he ask can he come into the room and search. I said, naw, you can'tcome in the room and search, you know, I mean. Because I knew what was inthe room. Then I was going downstairs to pick up an order. We orderedsome food downstairs in the basement.
 Q. Then what happened?
 A. He took the key from me, the other officer took the key, and then heentered the room.
 Q. Did you tell him he could come in and search that room?
 A. No, I did not.
 Q. Did you know what was in the room?
 A. Yes, Sir.
 Q. All right, did you say anything to him about the girl?
 A. I told him we just got finish having a little contact, you know whatI'm saying, so she is not dressed.
 Q. Okay. And would you have told him to come on in, knowing that,assuming that she was undressed?
 A. No, sir."[2]
 {¶ 13} The trial court denied the motion to suppress. Thereafter, Knox pled no contest to the charges and the trial court pronounced him guilty. The trial court imposed a mandatory minimum prison term of three years. Knox now appeals.
 MOTION TO SUPPRESS {¶ 14} In his sole assigned error, Knox argues the trial court erred in denying his motion to suppress. We disagree.
 {¶ 15} An appeal of a trial court's ruling on a motion to suppress evidence involves mixed questions of law and fact. Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.[3] Thus, the credibility of witnesses during a suppres-sion hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility.[4] Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.[5]
 {¶ 16} The Fourth and Fourteenth Amendments to the United States Constitution prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification.[6] Section 14, Article I of the Ohio Constitution protects the same interests in a manner consistent with the Fourth
Amendment to the United States Constitution.[7]
 {¶ 17} Knox contends the trial court erred by failing to suppress the evidence seized from his hotel suite because the Cleveland Clinic police officers' warrantless search was unconstitutional. Specifically, Knox contends that the trial court erred in essentially finding that he consented to the search and that his consent was given voluntarily. We are not persuaded.
 {¶ 18} In order to waive his Fourth Amendment privilege against unreasonable searches and seizures, the accused must give a consent which is voluntary under the totality of all the surrounding circumstances.[8]
To rely on the consent exception to the warrant requirement, the State must show by clear and positive evidence that the consent was "freely and voluntarily" given.[9] Whether a consent to search was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances.[10] While the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.[11]
 {¶ 19} Here, the trial court was presented with conflicting testimony from Officer Varga and from Knox. Officer Varga testified Knox consented to a security check of the hotel suite, but Knox refutes this assertion. The trial court, being in the best position to evaluate credibility, found Officer Varga's testimony more credible, and thus denied Knox's motion to suppress.
 {¶ 20} Although our standard of review of the trial court's decision on a motion to suppress is de novo, we review the trial court's factual findings only for clear error, giving due weight to the trial court as to the inferences drawn from those facts.[12] Thus, we will accept the trial court's factual determination that Knox voluntarily consented to the search of his hotel suite as long as that finding is not clearly erroneous.
 {¶ 21} Officer Varga testified that he responded to the Intercontinental Hotel because of a complaint of smoke. The officers eventually determined it was coming from Knox's hotel suite. The officers had a brief conversation with Knox, wherein they requested permission to do a security check of the hotel suite, and Knox agreed. However, when Officers Varga and Potchatek entered the hotel suite, they immediately realized that Knox had been less than forthright. The officers discovered three other males in the suite and a fully clad female. Additionally, the officers found a large quantity of marijuana in plain sight.
 {¶ 22} The record before us reveals the trial court heard the following testimony from Knox:
"Q. Now, when you had this conversation with the officers out in thehall, you told them that you'd had some contact with your girlfriend, andthat she was undressed; is that right?
 A. Right.
 Q. But, in fact, she was dressed, wasn't she?
 A. Right.
 Q. So you lied to them?
 A. Yes, ma'am.
 Q. You also told the officers that you and she were the only ones inthe room.
 A. Because I knew what was inside the room, ma'am, so I —
 Q. So there were others in the room?
 A. Yes, ma'am.
 Q. So you lied to the officers?
 A. Yes, ma'am.
 Q. You lied to the officers about your girlfriend being undressed.
 A. Yes, ma'am.
 Q. And you lied to the officers about who else was in the room.
 A. Yes, ma'am.
 Q. And you did that — you lied to keep yourself out of trouble.
 A. Basically."[13]
 {¶ 23} Although, Knox urges this court to reject the trial court's determination that Officer Varga's testimony was credible, Knox's testimony as excerpted above confirms the prudence of the trial court's decision. Thus, the trial court's finding that Knox voluntarily consented to the search of his hotel suite was supported by ample evidence. Consequently, we conclude the trial court did not err in denying Knox's motion to suppress. Accordingly, we overrule Knox's sole assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., and Kilbane, J., concur.
[1] Tr. at 13-14.
[2] Tr. at 39.
[3] See State v. Robinson (1994), 98 Ohio App.3d 560; State v.Rossiter (1993), 88 Ohio App.3d 162; State v. Lewis (1992),78 Ohio App.3d 518; State v. Warren (Aug. 12, 1991), 4th Dist. No. 90CA7.
[4] See State v. Mills (1992), 62 Ohio St.3d 357; State v. Fanning
(1982), 1 Ohio St.3d 19.
[5] See State v. Harris (1994), 98 Ohio App.3d 543.
[6] United States v. Cortez (1981), 449 U.S. 411, 417; Reid v. Georgia
(1980), 448 U.S. 438, 440; Terry v. Ohio (1968), 392 U.S. 1, 19.
[7] State v. Lindway (1936), 131 Ohio St. 166; State v. Burkholder
(1984), 12 Ohio St.3d 205.
[8] Schneckloth v. Bustamonte, 412 U.S. 218, 36 L.Ed.2d 854,93 S.Ct. 2041, State v. Childress (1983), 4 Ohio St.3d 217, paragraph one of the syllabus.
[9] Bumper v. North Carolina (1968), 391 U.S. 543, 548,20 L. Ed.2d 797, 802, 88 S.Ct. 1788.
[10] Schneckloth, 412 U.S. at 227, 36 L.Ed. 2d at 862-863.
[11] State v. Robinette (1997), 80 Ohio St.3d 234, 243, citingSchneckloth, 412 U.S. at 248-249, 36 L.Ed.2d at 875.
[12] Ornelas v. United States (1996), 517 U.S. 690, 699,134 L. Ed.2d 911, 920, 116 S.Ct. 1657; United States v. Tompkins (1997),130 F.3d 117, 120.
[13] Tr. at 43-44.