JOURNAL ENTRY and OPINION
{¶ 1} The grand jury charged defendant Matthew Palinkas with one count of possession of drugs and two counts of drug trafficking.
 {¶ 2} Palinkas filed a motion to suppress evidence on two grounds: (1) that the arrest warrant contained a defect in the listed date and (2) that police continued a custodial interrogation after he requested counsel. The court denied the motion to suppress. Palinkas pleaded no contest and the court found him guilty. Palinkas appeals, complaining that the court erred by denying his motion to suppress.
 I {¶ 3} Many appellate districts, including this one, have stated that when reviewing factual determinations made on motions to suppress evidence, the appellate court reviews only for "clear error." See, e.g., State v. Knox, Cuyahoga App. No. 85772,2005-Ohio-5347; State v. Scharf, Lake App. No. 2003-L-203,2005-Ohio-4206; State v. Tucker, Hamilton App. No. C-020821,2003-Ohio-6056. This reference to the clear error standard appears to derive from Ornelas v. United States (1996),517 U.S. 690, 699.
 {¶ 4} The "clear error" standard of review has not been adopted by the Ohio Supreme Court. Instead, the Ohio Supreme Court employs the manifest weight of the evidence standard. InState v. Burnside, 100 Ohio St.3d 152, 203-Ohio-5372, ¶ 8, the Ohio Supreme Court stated:
 {¶ 5} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills
(1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Fanning (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583." See, also, State v. Brinkley, 105 Ohio St.3d 231, 2005-Ohio-1507;State v. Nields, 93 Ohio St.3d 6, 2001-Ohio-1291.
 {¶ 6} Consistent with the manifest weight of the evidence standard of review employed by the court of last resort in this state, we review the court's ruling on a motion to suppress to determine whether competent, credible evidence supported the factual findings. We do so with the understanding that the trial court assumes the role of the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. State v. Smith, 80 Ohio St.3d 89, 105,1997 Ohio 355, 684 N.E.2d 668. Accepting those facts as true, we then independently determine whether the trial court's decision met the applicable legal standard. State v. Santini,144 Ohio App.3d 396, 406, 2001-Ohio-3313.
 II {¶ 7} Palinkas argued that the court erred by concluding that the police executed a valid arrest warrant. The police arrested Palinkas on August 5, 2004. However, the complaint sworn as the basis for the arrest warrant issued to the police was dated August 6, 2004. Palinkas maintains that this meant the police arrested him one day before the arrest warrant issued, so the arrest was, in effect, warrantless. The officers testified that a ministerial error caused the complaint to be erroneously dated August 6th, when, in fact, it had been signed on August 5th, the same day that the arrest warrant had been executed. The court found the officers testified credibly and that they received the warrant on August 5th, but that it had been misdated for August 6th.
 {¶ 8} In Payton v. New York (1980), 445 U.S. 573, 602-603, the court held that in the absence of consent or exigent circumstances, police must have a warrant before entering a home to make an arrest. The court held that an arrest in the home not only involved the government invasion in any arrest, but also invaded the sanctity of the home: "[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Id. at 590.
 {¶ 9} Nevertheless, exceptions to the warrant requirement exist. As applicable here, the exclusionary rule will not apply to government actions taken in good faith in reliance on the validity of the warrant. See United States v. Leon (1984),468 U.S. 897. The good faith exception fully applies to arrest warrants. See State v. Oke, Wood App. No. WD-040-082,2005-Ohio-6525.
 {¶ 10} In United States v. Anderson (C.A.D.C. 1988),851 F.2d 384, 390, the court of appeals stated:
 {¶ 11} "The Supreme Court has made clear `that technical defects in a warrant do not call for or permit exclusion of what the search produces.' United States v. Hornick, 815 F.2d 1156,1158 (7th Cir. 1987) (citing United States v. Leon,468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984)). Moreover, numerous federal decisions dealing with similar fact situations confirm that the particular `foibles in the administration of Rule 41' that occurred in this case are not grounds for suppression. See, e.g., Hornick, 815 F.2d at 1158 (the fact that federal warrant was authorized by a state rather than federal judge did not call for exclusion of evidence seized);United States v. Comstock, 805 F.2d 1194, 1200 (5th Cir. 1986), cert. denied, 481 U.S. 1022, 107 S. Ct. 1908, 95 L. Ed. 2d 513
(1987) (suppression not called for even though `search warrant was not issued by court of record as required by Rule 41(a)');United States v. Searp, 586 F.2d 1117, 1122 (6th Cir. 1978); cert. denied, 440 U.S. 921, 59 L. Ed. 2d 474, 99 S. Ct. 1247
(1979) (suppression of evidence was not justified despite the fact that the warrant, in violation of Rule 41, did not authorize a night search and the affidavit `disclose[d] no facts which would justify such a search'); United States v. Ravich,421 F.2d 1196, 1200-02 (2d Cir.), cert. denied, 400 U.S. 834,27 L. Ed. 2d 66, 91 S. Ct. 69 (1970) (same); United States v. Ritter,752 F.2d 435, 440-41 (9th Cir. 1985) (`purely technical violation of Rule 41 does not require the suppression of evidence');United States v. Burke, 517 F.2d 377, 381-82 (2d Cir. 1975) (exclusion not required even though Rule 41 was not complied with in that the warrant was not directed to federal officers, did not require search within ten days, and did not designate a federal magistrate to whom return should be made)."
 {¶ 12} Although the cited case law refers to Crim.R. 41 and the issuance of search warrants, there is no rational distinction between search warrants and arrest warrants for Fourth Amendment purposes. Both warrants will issue only upon probable cause. Hence, the good faith exception applies equally to arrest warrants obtained pursuant to Crim.R. 4 and R.C. 2935.08.
 {¶ 13} The court stated that:
 {¶ 14} "The Court has found credible the testimony of the officers that they did seek and obtain the warrant on the 5th and it remains unknown why it is not journalized or placed on [sic.] until the 6th, but I think ultimately the determination of the Court is that the matter of the arrest warrant itself is not determinative whether it was the 5th or not."
 {¶ 15} The court found as a matter of fact that the officers obtained and executed the arrest warrant on August 5th, and the complaint supporting the application for the arrest warrant contained a ministerial error. Palinkas offered no evidence whatsoever to demonstrate that the officers acted in bad faith, other than relying on the mistake itself as proof of bad faith. This simply begs the question. The court believed the officers, and we have been presented with no evidence to suggest that the court lost its way in reaching this factual conclusion.
 III {¶ 16} Palinkas also based his motion to suppress on his invocation of the right to counsel after his custodial interrogation commenced. Evidence presented at the suppression hearing showed that the police read Palinkas his rights and began interrogating him at 3:45 p.m. About 45 minutes into the interrogation, Palinkas asked the officers, "Do you think I need a lawyer?" The officers conducting the interrogation replied that they could not give legal advice. They continued the questioning and the interrogation lasted until 6:58 p.m. Palinkas then signed a statement in which he confessed to having sold the drugs in question. Palinkas argues that his question about counsel was an invocation of the right to counsel and that all questioning should have ceased at that point; consequently, he believed that the statement he gave should have been declared inadmissible.
 {¶ 17} In Miranda v. Arizona (1966) 384 U.S. 436, 467-471,16 L.Ed.2d 694, 86 S.Ct. 1602, the United States Supreme Court held that an individual subjected to custodial interrogation must be informed of his right to remain silent and of his right to have counsel present during questioning. Any questioning must cease if an individual invokes these rights at any time prior to or during questioning. Id. at 473-474. When an individual indicates his desire to have counsel present, authorities may continue interrogation only if, "the accused himself initiates further communication, exchanges, or conversations with police."Edwards v. Arizona (1981) 451 U.S. 477, 484-485,68 L.Ed.2d 378, 101 S.Ct. 1880. This requires the court to, "determine whether the accused actually invoked his right to counsel."Smith v. Illinois (1984), 469 U.S. 91, 95, 83 L.Ed.2d 488,105 S.Ct. 490.
 {¶ 18} The issue on appeal is whether Palinkas' question, "Do you think I need a lawyer?" was sufficient to invoke the right to counsel. In Davis v. United States (1994), 512 U.S. 452, the United States Supreme Court considered whether the statement "Maybe I should talk to a lawyer." constituted a request for counsel. The court held that this statement did not constitute an actual request for counsel because it was too ambiguous and equivocal and would force the police to make difficult judgment calls about the content and intent of the statement. Id. at 461. The court held that the right of counsel is not invoked unless the suspect does "clearly request an attorney." Id.
 {¶ 19} The facts of this case are nearly identical to those in Davis. When Palinkas said "Do you think I need a lawyer?" he no more invoked the right to counsel than the suspect in Davis
did by saying "Maybe I should talk to a lawyer." Palinkas asked a question which the police officers could not answer. This question did not signal to the officers that Palinkas wanted an attorney. It simply showed that he had been aware of his right to counsel, and his continued participation in the interrogation could only be taken as a tacit "no" answer to his own question.
 {¶ 20} Palinkas did not clearly and unequivocally invoke his right to counsel, so the police did not need to cease interrogation. The signed statement was validly obtained and the court did not err by refusing to exclude it from the evidence.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Karpinski, J., concur.