OPINION
{¶ 1} This appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, Shannon Loveless, appeals the decision of the Jefferson County Court of Common Pleas that found Loveless guilty of aggravated robbery, a firearm specification, and carrying a weapon under disability and sentenced him to an aggregate of thirteen years in prison. Loveless's appellate counsel has filed a no-merit brief on appeal and seeks to withdraw as counsel. In that no-merit brief, counsel lists a few issues which he could argue on Loveless's behalf, but determined that those issues were meritless and would not arguably support an appeal. Loveless has raised additional issues which he believes entitle him to relief.
 {¶ 2} All of the issues raised by both appellate counsel and Loveless are wholly frivolous. However, Loveless's sentence violated his right to a jury trial. Accordingly, counsel's motion to withdraw is denied, Loveless's sentence is vacated, and this case is remanded for resentencing in accordance with State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-0856.
 Facts {¶ 3} On August 5, 2005, Shannon Clark was working at Yorgo's Gyros and Potatoes in Steubenville, Ohio, when a tall, black man, who wore a nylon stocking cap over his face and a yellow t-shirt, pointed a firearm at her and demanded that she give him the money in the cash register. Clark could see the man's face through his stocking and recognized him since he had been a customer in the restaurant on a previous occasion. Clark ran into the back of the restaurant, where her employer and a co-worker were. The man followed, pointed his firearm at the owner, George Sergakis, and again demanded the money from the cash register. Sergakis realized the firearm was a real Walther, based on his experience in the Greek army and began walking out to the cash register with the man. He also recognized the man through the stocking since the man had been in the restaurant earlier that week.
 {¶ 4} As the owner began walking out of the back with the man, another customer ran screaming from the restaurant. The man chased her outside, which *Page 2 
allowed Sergakis to call the police. After chasing the woman outside, the man fled without completing the robbery. The woman he chased out of the restaurant saw the man run in the direction of a Rite-Aid.
 {¶ 5} Meloney Keenan was working at the Rite-Aid at this time. She stepped outside to see a tall, black man in a yellow t-shirt running by her. The man held a dark colored cloth in his hand. She recognized the man, since he had previously dated a co-worker at Rite-Aid, and knew that his first name was Shannon. At the prompting of police, she confirmed through her co-worker that his last name was Loveless. Keenan saw the man run into an alley between a store and an apartment building.
 {¶ 6} Police quickly arrived at the scene and began canvassing the area for a man fitting the description supplied by Sergakis and Clark. Keenan told them she saw a man fitting that description run past and identified him by name to the officers. An unidentified man near the apartment building told police that the man they were chasing was in that building.
 {¶ 7} The police secured the perimeter of the building and, along with the building's owner, began searching for Loveless. They would knock on a door and, if there was no answer, enter the apartments looking for Loveless. When they reached apartment six, which was rented to a woman who lived alone, they received no answer, but upon entering they found Loveless alone in the apartment on a couch wearing a white t-shirt. The police arrested him immediately.
 {¶ 8} After the police received Loveless's name from Keenan, they prepared a photo array containing pictures of Loveless and five other men fitting his description. Clark identified Loveless immediately as the man who tried robbing the restaurant. This identification occurred minutes after the robbery. Police then drove her by Loveless, who was then in police custody, and she again identified Loveless as the suspect.
 {¶ 9} After arresting Loveless, the police obtained a search warrant for the apartment. In the apartment, they found a man's yellow t-shirt, the only piece of male *Page 3 
clothing in the apartment; a black nylon stocking, which was stuffed behind the couch where Loveless was discovered; and a Walther handgun, which was wrapped in a sheet. It was later determined that the firearm was operable, even though it was not loaded at the time.
 {¶ 10} Loveless was indicted by the Jefferson County Grand Jury on September 7, 2005, for aggravated robbery, three counts of felonious assault, and carrying a weapon under disability. Each count, other than carrying a weapon under disability, contained a firearm specification. Attorney N. Stephen Nigolian was appointed to represent Loveless and the case was set for trial on November 1, 2005. The State provided a bill of particulars and full discovery to Loveless.
 {¶ 11} On October 21, 2005, Loveless filed a pro se motion to sever the carrying a weapon under disability charge from the other charges for the purposes of trial, to suppress the handgun found at the apartment, and to suppress out-of-court and in-court identifications. The trial court heard the motion on October 26, 2005. At that hearing, Loveless told the trial court that he was greatly displeased with his counsel because counsel had refused to file this and other motions on Loveless's behalf and that he wished for new counsel. Attorney Nigolian told the trial court that he felt that the motions that Loveless wanted him to file were "spurious," but also requested that the court appoint new counsel given Loveless's level of displeasure with him. The trial court refused to appoint new counsel for Loveless.
 {¶ 12} At the hearing, the trial court granted Loveless's motion to sever the carrying a weapon under disability charge from the other charges for the purposes of trial and Loveless withdrew his motion to suppress the identifications. Loveless testified in support of his motion to suppress the handgun, claiming that the weapon was not his, not found on his person, and not discovered in a place he either lived or frequented. The trial court denied Loveless's motion to suppress.
 {¶ 13} On October 27, 2005, the State requested a jury view of Yorgo's and the trial court granted that request. Loveless was allowed to attend the jury view if he agreed to wear leg restraints. The trial court explained that this was necessary for *Page 4 
both public safety and to prevent Loveless's escape. Loveless did not wish the jury to see him in leg restraints and did not attend the jury view, although his attorney did so attend.
 {¶ 14} At the close of the State's case-in-chief, Loveless moved for a directed verdict and the trial court granted that motion as to one of the felonious assault counts. The matter then went to the jury for deliberations. The jury found Loveless guilty of aggravated robbery and the firearm specification attached to that count, but not guilty of the two remaining felonious assault counts.
 {¶ 15} The trial court held a change of plea hearing and sentencing hearing on November 17, 2005. At that hearing, Loveless agreed to plead guilty to the charge of carrying a weapon under disability in exchange for a recommendation that this charge run concurrent to the sentence for the robbery. The trial court accepted Loveless's plea after engaging in an extensive colloquy. It then sentenced him to the ten-year maximum for aggravated robbery, one year for the carrying a weapon under disability charge, and three years for the firearm specification. The trial court ordered that the firearm specification run consecutive to the sentence for the robbery and that the one-year term run concurrent to these sentences.
 Anders/Toney No Merit Appeal {¶ 16} In this case, Loveless's appellate counsel does not believe that there is any merit to Loveless's appeal and has moved to withdraw as counsel. An attorney appointed to represent an indigent criminal defendant on his first appeal as of right may seek permission to withdraw where the attorney can show that there is no merit to the appeal. See, generally, Anders v. California (1967) 386 U.S. 738. To support such a request, appellate counsel is required to undertake a conscientious examination of the case and accompany his or her request for withdrawal with a brief referring to anything in the record that might arguably support an appeal. State v. Toney (1970),23 Ohio App.2d 203, 207, citing Anders. The reviewing court must then decide, after a full examination of the proceedings, whether the appeal is wholly frivolous. Id. *Page 5 
 {¶ 17} In Toney, this court established guidelines to be followed in the event counsel of record determines that an indigent's appeal is frivolous:
 {¶ 18} "3. Where a court-appointed counsel, with long and extensive experience in criminal practice, concludes that the indigent's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, he should so advise the appointing court by brief and request that he be permitted to withdraw as counsel of record.
 {¶ 19} "4. Court-appointed counsel's conclusions and motion to withdraw as counsel of record should be transmitted forthwith to the indigent, and the indigent should be granted time to raise any points that he chooses, pro se.
 {¶ 20} "5. It is the duty of the Court of Appeals to fully examine the proceedings in the trial court, the brief of appointed counsel, the arguments pro se of the indigent, and then determine whether or not the appeal is wholly frivolous.
 {¶ 21} "6. Where the Court of Appeals makes such an examination and concludes that the appeal is wholly frivolous, the motion of an indigent appellant for the appointment of new counsel for the purposes of appeal should be denied.
 {¶ 22} "7. Where the Court of Appeals determines that an indigent's appeal is wholly frivolous, the motion of court-appointed counsel to withdraw as counsel of record should be allowed, and the judgment of the trial court should be affirmed." Id. at syllabus.
 {¶ 23} Loveless's appellate counsel has filed a no merit brief, but suggests seven potential assignments of error which Loveless could raise. Loveless has also presented us with four pro se issues. Two of these issues are addressed in the potential assignments of error suggested by counsel, but two raise independent issues. Each of the issues raised by Loveless and his appellate counsel are meritless. Nevertheless, this appeal is not wholly frivolous since Loveless's right to a jury trial was violated when he was sentenced.
 Suppression Issues *Page 6 {¶ 24} Many of the issues raised by Loveless and his appellate counsel address suppression issues. The first three potential assignments of error raised by Loveless's appellate counsel argue:
 {¶ 25} "The trial court committed error when it denied Appellant's pretrial motion to suppress the black Walther handgun found in apartment six of the Washington Square Apartments."
 {¶ 26} "The trial court committed plain error when it admitted the yellow t-shirt and the dark nylon material cap found during the search of apartment six in the Washington Square Apartments because these items were found during a search that occurred pursuant to a search warrant."
 {¶ 27} "The trial court did not committed [sic] plain error when it did not suppress the out-of-court, one-on-one, in-person identification of the Appellant and when it did not suppress the out-of-court photo array identification of the Appellant by witness Shannon Clark."
 {¶ 28} The second and third issues Loveless raises pro se argue:
 {¶ 29} "Whether trial counsel was ineffective regarding Appellant's suppression hearing and in the course of Appellant's trial."
 {¶ 30} "Whether the evidence used against the Appellant violated the constitutional requirements of a legal search and seizure."
 {¶ 31} The evidence addressed in these arguments falls into two general categories: 1) the evidence found in the apartment where Loveless was discovered and 2) identification evidence.
 {¶ 32} Loveless's motion to suppress challenged the admissibility of the handgun. Appellate review of a motion to suppress presents mixed issues of law and fact. State v. Jedd, 146 Ohio App.3d 167, 171,2001-Ohio-2479. When conducting that review, appellate courts must accept a trial court's findings of fact if they are supported by competent, credible evidence. State v. Winand (1996),116 Ohio App.3d 286, 288. Accepting those facts as true, we must then independently determine whether the trial court's decision met the applicable legal standard. State *Page 7 v. Santini, 144 Ohio App.3d 396, 406, 2001-Ohio-3313. Unless the trial court clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the trial court's decision. State v. Issa, 93 Ohio St.3d 49, 64,2001-Ohio-1290. An abuse of discretion connotes more than an error of law or judgment; it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 33} Loveless did not move to suppress either the other evidence found in the apartment or the identification evidence. This waives all but plain error regarding the admissibility of this evidence. State v.Nelson (Mar. 9, 2001), 2d Dist. No. 00CA12, at 2. Plain error only exists when it is clear the verdict would have been otherwise but for the error. State v. Sanders, 92 Ohio St.3d 245, 263, 2001-Ohio-0189. The defendant bears the burden of demonstrating plain error. State v.Wade (1978), 53 Ohio St.2d 182, 188.
 {¶ 34} Loveless also contends that his counsel was ineffective with regard to these issues. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate counsel's performance was deficient and that deficient performance prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 668, 687. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. State v. Smith (1985), 17 Ohio St.3d 98, 100. Ineffectiveness is demonstrated by showing that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment.State v. Hamblin (1988), 37 Ohio St.3d 153, 156. To establish prejudice, a defendant must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland at 694. A reasonable probability must be a probability sufficient to undermine confidence in the outcome of the case. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. The defendant bears the burden of proof in demonstrating ineffective assistance of counsel. Smith at 100. *Page 8 
 Evidence in Apartment {¶ 35} Loveless challenges the evidence found in apartment six, but Loveless did not have a legitimate expectation of privacy in that space, so he had no Fourth Amendment right against a search of that apartment.
 {¶ 36} Fourth Amendment rights are personal and, thus, may not be vicariously asserted. Rakas v. Illinois (1978), 439 U.S. 128, 133-134. A defendant cannot contest an allegedly illegal search unless he possessed a "legitimate expectation of privacy" in the area searched. Rawlings v.Kentucky (1980), 448 U.S. 98, 105. A defendant does not have a legitimate expectation of privacy when the evidence against the defendant was gained in violation of another's privacy rights. Brown v.United States (1973), 411 U.S. 223, 230. The defendant bears the burden of proving that he had a legitimate expectation of privacy in the area searched. Rawlings at 105.
 {¶ 37} At the suppression hearing, Loveless testified that he did not stay in Hoover's apartment. Instead, he testified that he visited her socially from time to time. He testified that these social visits were not every day events.
 {¶ 38} In State v. Williams, 73 Ohio St.3d 153, 1995-Ohio-0275, the Ohio Supreme Court dealt with a similar situation. In that case, police seized evidence used against the defendant at an apartment belonging to the defendant's friend. The trial court refused to suppress this evidence and the Ohio Supreme Court affirmed that decision.
 {¶ 39} "Based upon the record before this court, we cannot say that appellant had a reasonable expectation of privacy. The apartment belonged to someone else; although appellant had some personal items in the apartment, there is no indication that he was staying in the apartment on a regular or even a semi-regular basis; testimony indicates that appellant was staying at his cousin's apartment when the search occurred. Unlike the United States Supreme Court case of Minnesota v.Olson (1990), 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85, where the court determined that the defendant's status as an overnight guest was sufficient to show *Page 9 
that he had an expectation of privacy that society was prepared to recognize as reasonable, there was no evidence that appellant was an overnight guest in the apartment at the time the police executed the search warrant. Accordingly, the broader `reasonable expectation of privacy' rule is not met based upon the facts of this case." Id. at 166-167.
 {¶ 40} The facts of this case are similar to those inWilliams. In this case, the apartment belonged to someone else, there is no indication that Loveless visited the apartment on even a semi-regular basis, and Loveless testified that he had never been an overnight guest at the apartment. Thus, Loveless did not have a legitimate expectation of privacy in the apartment. Accordingly, he does not have a constitutional basis to challenge the admissibility of any of the evidence seized at that apartment. Loveless's arguments concerning both the admissibility of this evidence and counsel's efforts in suppressing this evidence are wholly frivolous.
 Identification {¶ 41} Under the Due Process Clause, when a challenged identification is unreliable, then testimony as to the identification is inadmissible.Neil v. Biggers (1972), 409 U.S. 188, 198. Due process demands a fair assurance against the awful risks of misidentification. Manson v.Brathwaite (1977), 432 U.S. 98, 109. Identification testimony is constitutionally unreliable if the identification procedure was so impermissibly suggestive that there was "a substantial likelihood of irreparable misidentification." Simmons v. United States (1968),390 U.S. 377, 384. This standard encompasses a two-part test: 1) deciding whether the identification procedure used was impermissibly suggestive and 2) deciding whether, under all the circumstances, the identification was reliable. State v. Waddy (1992), 63 Ohio St.3d 424, 438-439.
 {¶ 42} If an identification procedure is impermissibly suggestive, then the identification is only admissible if, under all the circumstances, it appears that the identification is "the result of observations at the time of the crime" and, therefore, reliable.State v. Davis, 76 Ohio St.3d 107, 112, 1996-Ohio-0414, citingColeman v. *Page 10 Alabama (1970), 399 U.S. 1, 5-6. The factors to be considered to determine an identification's reliability "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers at 199-200.
 {¶ 43} In this case, there is no evidence that the initial photo array shown to Clark was impermissibly suggestive. The array consists of six people, including Loveless, who fit Loveless's general description. Clark immediately identified Loveless as the person who committed the robbery. There is no indication that police officers did anything untoward to direct Clark to Loveless's photograph.
 {¶ 44} Moreover, the circumstances surrounding the identification support a conclusion that it was reliable. Clark had an opportunity to view the witness and paid sufficient attention to recognize him as a prior customer in Yorgo's. Her description of Loveless was sufficiently accurate to aid in the successful apprehension of Loveless minutes after the crime, she was immediately certain that Loveless was the person who committed the robbery when she viewed the photo array, and the identification occurred minutes after the crime.
 {¶ 45} Given these facts, any argument against the admissibility of this evidence is wholly frivolous.
 Withdrawal of Counsel {¶ 46} In the fourth issue which Loveless presents to this court pro se, he argues:
 {¶ 47} "Whether the trial court erred in not allowing defense counsel to withdraw from the case."
 {¶ 48} Loveless believes that he was unconstitutionally forced to be defended by an attorney he did not trust.
 {¶ 49} A criminal defendant's Sixth Amendment right to counsel does not extend to a right to counsel of the defendant's choice. Thurston v.Maxwell (1965), *Page 11 3 Ohio St.2d 92, 93. The right to counsel also does not include a right to a meaningful or peaceful relationship between counsel and defendant.Morris v. Slappy (1983), 461 U.S. 1, 13-14. However, a criminal defendant is entitled to the appointment of new counsel when there is a showing of good cause, such as a conflict of interest where the conflict is so severe that the denial of substitute counsel would violate the Sixth Amendment right to counsel or a complete breakdown of communication. Blankenship at 558.
 {¶ 50} The decision whether to substitute counsel is within the discretion of the trial court. State v. Jones, 91 Ohio St.3d 335,343-44, 2001-Ohio-0057. Therefore, this court must review the trial court's decision for an abuse of that discretion. State v. Murphy,91 Ohio St.3d 516, 523, 2001-Ohio-112.
 {¶ 51} In this case, the only basis Loveless expressed for wanting new trial counsel was that his present counsel refused to file certain motions, such as motions to suppress the evidence found in the apartment or the identification evidence. However, any arguments challenging the admission of this evidence would have been frivolous, so it was reasonable for trial counsel to reject Loveless's suggestions as "spurious." Trial counsel's failure to file these frivolous motions does not show a complete breakdown of communication between client and counsel and there is no evidence suggesting such a breakdown. Accordingly, the trial court did not abuse its discretion when it denied Loveless's request for substitute trial counsel. Loveless's arguments in this regard are wholly frivolous.
 Jury Panel {¶ 52} In the first issue that Loveless presents pro se, he argues:
 {¶ 53} "Whether the structure of the trial jury and the jurors themselves constitute violations of the Appellant's constitutional rights to a fair trial."
 {¶ 54} Loveless contends that he was denied a right to a fair trial since the jury pool contained no prospective African-American jurors. However, Loveless cannot point to any evidence showing that the racial composition of the venire violated his constitutional rights. *Page 12 
 {¶ 55} "[T]he selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." Taylor v. Louisiana (1975),419 U.S. 522, 528. However, a defendant must prove the following three things in order to establish a prima facie violation of the requirement for a representative cross section of the community:
 {¶ 56} "(1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the underrepresentation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri (1979), 439 U.S. 357,364.
 {¶ 57} In this case, Loveless did not introduce any evidence on this issue. In particular, there is no evidence that Jefferson County systematically excludes African-Americans in the jury-selection process. Loveless's arguments on appeal in this regard are wholly frivolous.
 Jury View {¶ 58} Counsel's fourth proposed assignment of error argues:
 {¶ 59} "The trial court violates Shannon Loveless's due process right to a fair trial by requiring that he wear leg shackles if he chose to attend the jury view."
 {¶ 60} R.C. 2945.16 grants courts the authority to allow the jury to view a place at which a material fact occurred. "The accused has the right to attend such view by the jury, but may waive this right." Id. But though a defendant has a statutory right to be present at the jury view, he does not have a constitutional right to be there. A criminal defendant has a right to be present during every critical stage of the trial proceedings. Crim.R. 43(A); Illinois v. Arlen (1970),397 U.S. 337, 338. However, a view of a crime scene is not a crucial stage in the proceedings and denying a defendant the opportunity to be at a jury view does not violate due process. Snyder v. Massachusetts (1934),291 U.S. 97, 109; State v. Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751, at ¶ 69; State v. Richey, 64 Ohio St.3d 353, 367, 1992-Ohio-0044.
 {¶ 61} "[A] view where nothing is said by any one to direct the attention of the *Page 13 
jury to one feature or another. The Fourteenth Amendment does not assure to a defendant the privilege to be present at such a time. There is nothing he could do if he was there, and almost nothing he could gain. The only shred of advantage would be to make certain that the jury had been brought to the right place and had viewed the right scene."Snyder at 109.
 {¶ 62} The trial court is vested with broad discretion in determining whether a jury view is appropriate and the scope of such a view.Richey at 367. Its judgment in this regard will not be disturbed absent an abuse of discretion. State v. Zuern (1987), 32 Ohio St.3d 56, 58. Furthermore, a decision denying a defendant his statutory right to be at a jury view will only be reversed if the defendant is materially prejudiced by that decision. Cassano at ¶ 70.
 {¶ 63} In this case, the trial court did not deny Loveless the right to be at the jury view; it merely conditioned the exercise of that right by requiring that Loveless wear leg restraints if he decided to attend the jury view. Since the trial court could have denied Loveless any ability to attend the jury view without violating due process, conditioning his ability to so attend also does not violate due process.
 {¶ 64} Furthermore, Loveless cannot show that he was materially prejudiced by his absence from the jury view. His counsel was present and there is no indication in the record that anything improper occurred at the jury view. Accordingly, any challenge to the trial court's conditions upon Loveless's attendance at the jury view are wholly frivolous.
 Sufficiency and Weight of the Evidence {¶ 65} Counsel's fifth and sixth proposed assignments of error argue:
 {¶ 66} "The jury's verdict finding Appellant guilty of aggravated robbery and finding that Appellant used a firearm to commit aggravated robbery was against the sufficiency of the evidence."
 {¶ 67} "The jury's verdict finding Appellant guilty of aggravated robbery and finding that Appellant used a firearm to commit aggravated robbery was against the manifest weight of the evidence." *Page 14 
 {¶ 68} As the Ohio Supreme Court has stated, arguments concerning the "sufficiency of the evidence" should not be confused with those addressing the "manifest weight of the evidence." See State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-0052, at paragraph two of the syllabus ("The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.") "Sufficiency of the evidence" is "`a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" Id. at 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. at 273. Whether the evidence is legally sufficient is a question of law. Thompkins at 386.
 {¶ 69} In contrast, when reviewing whether a conviction was against the manifest weight of the evidence, this court must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'" State v.Tibbetts (2001), 92 Ohio St.3d 146, 163, 2001-Ohio-0132, quotingState v. Getsy (1998), 84 Ohio St.3d 180, 193, 1998-Ohio-0533. In order to do this, this court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "`Weight is not a question of mathematics, but depends on its effect in inducing belief'" (Emphasis sic.) Thompkins at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 70} In this case, the jury convicted Loveless of aggravated robbery, in *Page 15 
violation of R.C. 2911.01(A)(1), with a firearm specification, in violation of R.C. 2941.145. R.C. 2911.01(A)(1) defines aggravated robbery as follows:
 {¶ 71} "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 72} The firearm specification applies if "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A).
 {¶ 73} A "theft offense" is, among other things, when a person knowingly obtains or exerts control over either the property or services of another either without the consent of the owner or person authorized to give consent or by deception, threat, or intimidation. R.C.2913.01(K)(1); 2913.02(A). A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C.2923.11(A). A "firearm" is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1).
 {¶ 74} In this case, there is little doubt that someone committed an aggravated robbery in Yorgo's on August 5, 2005. A man came into the restaurant demanding the money in the cash register while brandishing a firearm. This clearly meets the elements of the offense of aggravated robbery. The only question, therefore, is whether Loveless was the person who committed this crime.
 {¶ 75} The evidence proving Loveless is the offender is substantial. Four witnesses described the man who robbed Yorgo's as a tall, black man wearing a yellow t-shirt. Immediately after the robbery. Keenan, who was familiar with Loveless, *Page 16 
told police both his name and that she had seen him run by Rite-Aid matching that description. Clark, when given a photo array containing Loveless's photo, immediately identified Loveless as the robber. Finally, police found a yellow t-shirt, nylon cap, and a firearm in the apartment where Loveless was discovered. All of these items were in Loveless's immediate area in that apartment. Given these facts, there is little question that Loveless is the man who robbed Yorgo's. Any argument concerning either the sufficiency or weight of the evidence is wholly frivolous.
 Ineffective Assistance of Counsel {¶ 76} The final assignment of error which counsel proposes argues:
 {¶ 77} "Appellant received ineffective legal representation throught [sic] the course of his criminal prosecution."
 {¶ 78} Counsel believes this argument is wholly frivolous and we agree. Counsel successfully argued that the trial court should grant a directed verdict on one felonious assault charge. Furthermore, counsel effectively cross-examined witnesses, which led to acquittals on the two remaining felonious assault charges. As described above, any arguments regarding the suppression of evidence would have been frivolous, so counsel was not ineffective for failing to move for the suppression of that evidence. We cannot see how counsel's performance was deficient in any way and any argument to the contrary would be wholly frivolous.
 Sentencing {¶ 79} Even though the arguments raised by both Loveless and his counsel are wholly frivolous, there is one argument Loveless could raise on appeal which would have merit.
 {¶ 80} In its recent decision in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-0856, the Ohio Supreme Court held that some of the statutes governing felony sentencing in Ohio unconstitutionally violated a defendant's right to a jury trial. In particular, the court found that R.C. 2929.14(C), which applies to maximum sentences, unconstitutionally allowed a trial court to increase a felony offender's sentence beyond the statutory maximum based on facts not found by the jury.Foster *Page 17 
at paragraphs one and three of the syllabus. However, the court found that the offending statute could be severed from the overall felony sentencing structure. Id. at paragraphs two and four of the syllabus. Thus, trial courts now "have full discretion to impose a sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at ¶ 100. After reaching this conclusion, the Ohio Supreme Court decided that any case reversed for these reasons should be remanded for resentencing. Id. at ¶ 104.
 {¶ 81} In this case, the trial court followed the dictates of R.C.2929.14(C) when sentencing Loveless. Accordingly, his sentence violated his Sixth Amendment right to a trial by jury. In accordance with the Ohio Supreme Court's mandate, this case must be remanded to the trial court for resentencing.
 Conclusion {¶ 82} Appellate counsel addressed seven arguments which Loveless could have made in this appeal, but those issues are wholly frivolous. Loveless then raised four issues pro se, but these arguments are also wholly frivolous. Nevertheless, there is one argument Loveless could raise which would have merit, the constitutional validity of his sentence. We must follow the dictates of Foster and remand this case for resentencing. Accordingly, counsel's motion to withdraw is denied, the sentence imposed on Loveless is vacated, and this case is remanded for resentencing.
 Donofrio, J., and Vukovich, J., concurs. *Page 1